## HARRY EDWARDS v. CITY OF GULFPORT.

### [49 South. 620.]

1. CRIMINAL LAW AND PROCEDURE. *Intoxicating liquors. Unlawful sales. Code* 1906, § 1746.

   Under Code 1906, § 1746, prohibiting the sale of intoxicating liquors, it is unlawful to sell alcoholic or malt liquors, and it is unnecessary to prove that such liquors are intoxicating.

2. SAME. *Instructions. Failure to ask.*

   In a prosecution for the unlawful sale of intoxicating liquors the accused cannot complain of the court's failure to instruct the jury defining malt or alcoholic liquors in the absence of a request for such an instruction.

FROM the circuit court of Harrison county.

HON. WILLIAM H. HARDY, Judge.

Edwards, appellant, was convicted in the court below of unlawfully selling intoxicating liquors and was sentenced to pay a fine and suffer imprisonment for thirty days; and appealed to the supreme court.

Appellant, as an attraction to his pool-room business in Gulfport, habitually sold to his customers and to the public generally different beverages among which was a concoction known and labeled as "Pabst's Mead." A policeman of the city purchased from appellant at his place of business two bottles of the concoction, and the chief of police sent one of the bottles to Peterson, an expert chemist. Appellant, having been arrested on the charge of illegally selling intoxicating liquors, was tried and fined in the municipal court and appealed to the circuit court. On his trial in the circuit court Peterson, the chemist, testified as stated in the opinion of the court.

*J. H. Mize,* for appellant.

The first instruction for the state was erroneous. Through this instruction the court below charged the jury that it was

immaterial whether the mead was intoxicating or non-intoxicating provided they should believe from the evidence beyond every reasonable doubt that it was a malt or alcoholic liquor. The instruction given the jury was no guide by which to determine whether or not the mead in question was a malt liquor or an alcoholic liquor. The correct procedure would have been for the instruction to allege the constituent requirements of a malt or alcoholic liquor and then leave it to the jury to say, under the facts, whether or not a malt or alcoholic liquor had been sold.

The court below further erred in refusing the second instruction asked by appellant. This refused instruction in effect charged that the appellant should be acquitted unless the city in the prosecution of the case proved beyond every reasonable doubt that the liquors in question when drunk to excess would produce intoxication. The court below in refusing this instruction denied the principle for whch appellant contended, namely that an alcoholic or malt liquor is a liquor containing alcohol or malt in sufficient quantities to produce intoxication in one who drinks the liquor to excess. It is not the law that for liquor containing an infinitesimally small trace of alcohol or malt in its composition is an alcoholic or malt liquor within the meaning of Code 1906, § 1746. *Bay Co. v. State,* 48 South. 428.

The case of *Reyfelt v. State,* 73 Miss. 416, is not in conflict with this decision. While the legislature intended to prohibit the sale of wine, as passed upon in the *Reyfelt case, supra,* it did not intend this prohibition to extend to a beverage which might contain so very small a percentage of wine as not to be in fact wine. · It would not be a violation of law for a man to sell a beverage from a ten gallon demijohn into which a pint of home-made blackberry wine had been .poured, provided the beverage contained no other elements which would produce intoxication when drunk to excess, since common sense would indicate that such a beverage was not wine. For the same reason we do not think it a violation of the law to sell any part of a vat of

liquid containing so small a percentage of malt or alcohol as not to produce intoxication even when drunk to excess.

A malt liquor, according to *Allred v. State,* 89 Ala. 102, 8 South. 56, is a result or product of a process by which grain—usually barley—is steeped in water to the point of germination, and the starch of the grain is thus converted into saccharine matter which is kiln-dried, then mixed with hops and by a further process or brewing made into a beverage.

An examination of Code 1906, § 1746, will show that the legislature named the kinds of liquors forbidden thereby to be sold, and then added a final and comprehensive clause, to wit: "All other drinks which, if drunk to excess, will produce intoxication." This last clause qualifies all the preceding clauses of the statute.

It was error in the court below to allow the cause to go to the jury without the jury's knowledge of what a malt or an alcoholic liquor was; hence, the judgment of the court below should be reversed. *Marks v. State,* 48 South. 864.

*J. L. Heiss,* for appellee.

There was no error in the action of the court below in permitting Dr. Peterson to testify concerning the contents of the letter sent to him in the box with the bottle of mead. 17 Cyc. 483.

The instructions complained of by complainant are not erroneous under the circumstances of this case.

The purpose of Code 1906, § 1746, is to prevent intoxication by forbidding the sale of beverages which may produce intoxication. The question to be determined in a case like this is not whether the liquor which was sold had actually produced intoxication, but instead, whether, if drunk to excess, it would produce intoxication. The legislature in enacting Code 1906, § 1746, did not leave it to the jury to decide the question of how much alcohol is required to be in a beverage before it can be adjudged an intoxicant when drunk to excess. Instead of this

the legislature absolutely declared that certain liquors, among them vinous, malt or alcoholic liquors, shall not be sold as a beverage.

From the testimony of the expert Peterson it is manifest that the conviction was proper. His testimony showed the liquor to be both an alcoholic and a malt liquor. And his testimony further stated that the liquor contained enough alcohol to make the average man drunk if he absorbed two bottles. *Reyfelt v. State,* 73 Miss. 415, 18 South. 925.

Argued orally by *R. V. Fletcher,* for appellant, and by *George Butler,* assistant attorney-general, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The indictment in this case charged the unlawful sale of intoxicating liquors. On the trial Peterson, the expert, testified to three facts: First, that the liquor in question, called "Pabst's mead," was an alcoholic liquor, containing four and six-tenths per cent. of alcohol to each bottle; second, that it was a malt liquor; and, third, that two bottles of it, if drunk, would intoxicate any average man. These facts, if believed by the jury, warranted appellant's conviction on the testimony beyond any reasonable doubt.

The only contention which has any merit here arises upon the instructions. The first instruction for the state is in these words: "The court instructs the jury that it is not for them to say whether the liquid sold was intoxicating, provided they believe from the evidence beyond every reasonable doubt that the liquid sold on the 11th day of January, 1909, was a malt or alcoholic liquor; and if they so find that such liquor so sold was a malt or alcoholic liquor they should find the defendant guilty." This the court gave. The defendant was refused the following charge No. 2: "The court instructs the jury, for the defendant, that unless the city proves beyond every reasonable doubt that the liquor in question, when drunk to excess, will produce in-

toxication, they will acquit the defendant." The first charge given for the state, on the testimony in this case, is directly approved by the case of *Reyfelt v. State,* 73 Miss. 416, 18 South. 925. The court there said: "The statute, for a violation of which the appellant was convicted, makes it unlawful to sell, *inter alia,* any 'vinous or alcoholic' liquor. The defendant sold home-made wine, made from the grape and from blackberries, which he and his witness swore would not intoxicate. He asked the court to instruct the jury to acquit, if it believed from the evidence the wine would not produce intoxication. This the court declined to do, but charged the jury to convict if the sale of wine was proved. This action of the court was correct. The legislature, believing in chemistry, and that the process of fermentation of the juice of the grape will produce alcohol, has seen fit to prohibit the sale of such product; and, regardless of the opinion of the witnesses that this prohibited article would not intoxicate, the sale was unlawful, for the legislature prohibited such sales because it thought that alcoholic wines would, in some instances, intoxicate." In other words, this court held in that case that, wherever the proof showed the liquor was one of the liquors designated as not to be sold by the statute, this ended the inquiry. In the case so much relied upon by counsel for appellant, *Marks v. State* (Ala.) 48 South. 864, it is expressly said: "When a prohibition statute names, designates, or enumerates the kinds, classes, or species of beverages against which its provisions are directed, then there is no room for further inquiry into the scope of such statute."

Our statute provides, that, "if any person shall sell, etc., any vinous, alcoholic malt intoxicating or spirituous liquors, or intoxicating bitters, or other drinks which if drunk to excess will produce intoxication, shall be punished," etc. Section 1746, Code 1906, names certain liquors which the legislature has expressly forbidden to be sold, and then adds the second clause, "or other drinks which if drunk to excess will produce intoxication." It is argued that this last clause qualifies all the preced-

ing clauses naming the particular liquors that shall not be sold. On that point the supreme court of Alabama, in the *Marks case, supra,* said: "While we agree in part with counsel for appellant, we cannot concur with them in the contention (so forcefully and ably insisted upon) to the effect that the clause, 'which if drunk to excess will produce intoxication,' qualifies and relates to each and all of the liquors or beverages which precede it—that is, to alcoholic, spirituous, vinous, or malt drinks. We are inclined to the opinion that this phrase qualifies or refers only to the clause, 'or other liquors or beverages by whatsoever name called,' which immediately precedes it, and which two phrases, taken together, constitute one of the six classes of liquor and beverage the sale of which is prohibited. We are led to this conclusion, not alone by the composition and grammatical construction of this section of the act, but also by reference to the history of such legislation in this and other states, and the judicial construction put upon the terms 'spirituous,' 'vinous,' 'malt,' and 'intoxicating' liquors and beverages by this and other courts. These terms each had a well-defined and accepted judicial construction by the courts, when used in such statutes; and it does not appear that there was any intention to change that well-accepted judicial construction. They were severally treated as being well known and defined; but the phrase, 'or other liquors or beverages by whatsoever name called,' is clearly shown not to refer to every well known or defined class, but is intended to include any and all other classes or kinds, not embraced in the foregoing five classes named, 'which if drunk to excess will produce intoxication.'" The *Reyfelt case* expressly held that, wherever the proof shows the sale of any of the liquors expressly prohibited from being sold, that was the end of the matter, and the party was guilty. The proof here does show expressly that this was a malt liquor, and also an alcoholic liquor. It went further even, and showed that two bottles of it, if drunk, would make any average person drunk.

It is said that the *Bacot case,* 94 Miss 225, 48 South. 228, shows it is not enough that the testimony shall show that the liquor was a malt liquor or an alcoholic liquor, but that to be a malt liquor or an alcoholic liquor, within the meaning of this statute, the liquor must contain enough malt or enough alcohol to intoxicate if drunk to excess, and that this last fact must always be one for the jury. This is a misconception of the *Bacot case.* The opinion in the *Bacot case* applies strictly to the facts of that case. The thing sold in that case was a phosphate liquor, and, as the phosphate was not one of the liquors the sale of which was expressly prohibited by the statute, it fell, of course, within the last class of liquors—that class which, if drunk to excess, will produce intoxication. But the evidence in this case does not show a liquor falling within the last class of the statute, and the *Bacot case* has no application. Neither does the case of *Allred v. State,* 89 Ala. 112, 8 South. 56, apply here. The court simply held there that the sale of Busby's Bitters was not within the statute. It was said that the statute did not forbid the sale of Busby's Bitters, and that the court did not judicially know that Busby's Bitters were intoxicating, and that consequently it was for the jury to say whether Busby's Bitters were a vinous or spirituous and malt liquor; that is to say, a liquor which was forbidden to be sold. That case has no application here.

This case falls squarely within the case of *Reyfelt v. State,* 73 Miss. 415, 18 South. 925. On the evidence in this case, it is perfectly manifest that a conviction is proper on either one of the two grounds: First, that the liquor was shown to be both an alcoholic and a malt liquor; and, second, that it was shown to contain enough alcohol to make an average man drunk if he drank two bottles.

It is complained that the court gave no charge to the jury defining what a malt or an alcoholic liquor is. Under the abominable system which prevails in this state in regard to instruc-

tions, it is enough to say that the appellant cannot complain here about this, since he did not ask, as he might very readily have done, an instruction on this subject in the court below.

*Affirmed.*