## CHARLES N. FULLER v. CITY OF JACKSON.

### [52 South. 873.]

#### TWO CASES.

**1.** CRIMINAL LAW AND PROCEDURE.  *Unlawful sale of intoxicating liquors.*
Code 1906, § 1746.  *Municipal ordinance.*

Code 1906, § 1746, as amended by Laws 1908, ch. 115, p. 116, pro-
hibiting the sale of any vinous, alcoholic, malt, intoxicating, or
spirituous liquors or intoxicating bitters or other drinks which
if drunk to excess will produce intoxication, prohibits the sale
of vinous, alcoholic, malt, intoxicating, or spirituous liquors or
intoxicating bitters, without reference to whether they in fact
intoxicate because such class of liquors are known to be of an
intoxicating character; and also prohibits the sale of any other
drink which if drunk to excess will produce intoxication.

**2.** SAME.  *Malt ale.*

The sale of malt ale, which is a malt liquor, and which contains
two and seventy-one one hundredth per centum of alcohol by
volume and two and twelve one-hundredth per centum by weight,
is prohibited by Code 1906, § 1746.  (Per .MAYES, C. J., and
· SMITH, J.)

**3.** SAME.  *Non-intoxicating beverage.*

A sale of a beverage which is not shown to be a vinous, alcoholic,
malt, intoxicating, or spirituous liquor or intoxicating bitter,
and which contains eighteen one-hundredths of one per centum of
alcohol by volume and thirteen one-hundredths of one per centum
by weight, is not prohibited by Code 1906, § 1746.  (Per MAYES,
C. J., and ANDERSON, J.)

FROM the circuit court of, first district, Hinds county.

HON. WILEY H. POTTER, Judge.

Fuller, appellant, was convicted in the municipal court of
Jackson, in two cases, of unlawfully selling intoxicating liquors
violation of a city ordinance; he appealed both cases to the
circuit court where he was tried *de novo* in each case and was

again convicted in each of them, and he appealed in each of them to the supreme court. The facts as stated by ANDERSON, J., were as follows:

These cases, being governed by practically the same principles, are considered together. The defendant was convicted in two cases for the unlawful sale of intoxicating liquors under the ordinances of the city of Jackson, and appeals to this court.

As authorized by section 3410, Code 1906, the municipal authorities adopted a general ordinance making all offenses against the criminal laws of the state, occurring within the limits of the city, not amounting to a felony, violations of the city ordinances and punishable as such. In each case the affidavit charged the defendant, Fuller, with selling "vinous, malt, alcoholic, intoxicating, and sprituous liquors," etc., in violation of section 1746, Code 1906, which had become an ordinance of the city as above set forth. There was an agreed state of facts in each case. In case No. 14,306 the facts agreed on are as follows: "The defendant did sell in the city of Jackson, Hinds county, Miss., a beverage known as 'Brewett' on the date mentioned in the affidavit filed herein. He sold it for cash and received the money for it. The said beverage sold by the said Fuller contained by volume .18 of 1 per cent. of alcohol, and by weight .13 of 1 per cent. of alcohol. The said beverage did not contain enough alcohol to make it intoxicating to any extent when drunk to excess. The said beverage so sold was not in fact an intoxicating liquor."

In this case the court gave the following instruction for the plaintiff: "The court instructs the jury for the plaintiff that if you believe from the evidence beyond a reasonable doubt that the defendant did on the date named in the affidavit sell a beverage known as 'Brewett,' and that the said liquor contained some alcohol, although not a sufficient amount of alcohol to make the said beverage intoxicating to any extent when drunk

to excess, you should find him guilty as charged." And refused instructions Nos. 1, 2, and 3 on behalf of the defendant, as follows: "No. 1. The court instructs the jury to find the defendant not guilty. No. 2. The court instructs the jury for the defendant that a liquor is not, within the meaning of the statutes of this state, alcoholic unless it contains a sufficient amount of alcohol to make it intoxicating to some extent when drunk to excess. No. 3. The court further instructs the jury for the defendant that if you believe from the evidence that the defendant did on the date named in the affidavit sell a certain beverage known as 'Brewett,' and that the said beverage contained the small per cent. of alcohol shown by the evidence, and that the said percentage of alcohol was too small to make the said liquid intoxicating to any extent even when drunk to excess, then you should find the defendant not guilty."

In case 14,307 the agreed facts are as follows: "The said defendant did on the date laid in the affidavit herein sell for cash, in the city of Jackson, Hinds county, Miss., as a beverage, a certain liquor known as 'Malt Ale.' The said beverage sold by the said defendant on the said date contained by volume 2.70 per cent. of alcohol and by weight 2.12 per cent. of alcohol."

The court gave the following instruction for the state: "The court instructs the jury for the plaintiff that if you believe from the evidence, beyond a reasonable doubt, that the defendant on or about the date named in the affidavit sold a certain liquor known as 'Malt Ale,' and that the said liquor was sold as a beverage and contained 2.12 per cent. of alcohol or 2.70 per cent., then you will find the defendant guilty as charged." And refused the following instructions asked on the part of the defendant: "The court instructs the jury for the defendant that the burden is upon the city of Jackson to prove that the liquor charged to have been sold is intoxicating to some extent when

drunk to excess; that it is not sufficient merely to show that the said liquors contained a small amount of alcohol. The court further instructs the jury that, unless you believe from the evi-. dence that the said liquor sold by the defendant contained a percentage of alcohol large enough to make the same when drunk to excess intoxicating to some extent, then you will find the defendant not guilty."

The giving of the charges asked for the state, and refusing those asked on behalf of the defendant, are assigned as error.

*Flowers, Fletcher & Whitfield,* for appellant.

Code 1906, § 1746, is a statute which affects the police power of the government. In the exercise of its police power the state can enact and execute laws abridging the rights of citizens to sell intoxicating liquors. All laws which concern the sale of intoxicating liquors are passed and enforced in the exercise of this police power. *Giozza v. Tiernan,* 148 U. S. 657; *Kidd v. Pierson,* 128 U. S. 1; *Mugler v. Kansas,* 123 U. S. 623.

It is because intoxicating liquors disturb the public peace and endanger the life, health and morals of the people that laws prohibiting or regulating the manufacture and distribution of them are upheld as being within the police power. *Boston Beer Co. v. Massachusetts,* 97 U. S. 25.

All the laws of our different states similar to Code 1906,. § 1746, are generally aimed at intoxicating liquors, that is, liquors which actually intoxicate, which contain an intoxicating element. The great temperance movement which is sweeping over our state and nation is directed not against innocent beverages but against those beverages which actually intoxicate the drinker.

The beverage sold by appellant contains only a very small quantity of alcohol. In a fifty gallon barrel of the beverage there is only two-thirds of a pint of alcohol. It would be

necessary to drink from three to five gallons of the beverage to take into the stomach as much alcohol as is contained in a pint of ordinary beer. The proportion of alcohol is so small in the beverage that enough of it cannot be taken into the human body and retained at any one time to even upset the mind in the slightest perceptible degree. The only fault chargeable against the beverage is that it has the above-mentioned small quantum of alcohol in it.

Can the legislature go so far as to prohibit the sale of liquors which are harmless when taken into the body and harmless also in other respects? There must somewhere be a limit on the restrictive powers of the legislature. Such limit is exceeded when the police power of the state or governing body is held, under Code 1906, § 1746, to be given the authority to prevent the sale of a beverage free of intoxicating elements or qualities. *Intoxicating Liquor cases,* 37 Am. St. Rep. 284, 291.

A legislature may define intoxicating liquors and may embrace within the definition liquors which are not in fact intoxicating, according to Black on Intoxicating Liquors, § 43. But the authorities upon which this textbook writer relies will be found not to support his dictum. *State v. Smith,* 14 R. I. 100; *Commonwealth v. Timothy,* 8 Gray (Mass.), 480. And in *Elder v. State,* 50 South. 370, the Alabama court discussed a statute similar to Code 1906, § 1746, and held the statute to be constitutional. But the Alabama court cited no decisions of other states to uphold its opinion.

In *Potts v. State,* 123 Am. St. Rep. (Texas), 847, the Texas court had before it the question whether lager beer was intoxicating, and under the evidence, or rather, lack of evidence, a judgment of conviction of appellant was reversed. And see *State v. Fredericksburg,* 115 Am. St. Rep. 295; *Ex parte Brown,* 70 Am. St. Rep. 743; *State v. Gilmore,* 33 W. Va. 146.

The supreme court of the United States in the first case where

it became necessary to say that the states have the right to control the sale of liquors or any other business inimical to the public peace, health, morals or safety, emphasizes the idea that the liquors prohibited may be thus properly controlled by the state because they are intoxicating, and hence are dangerous and are supposed to be a menace to the public welfare. It is for such reason that they may be constitutionally condemned. *Bartemeyer v. Iowa,* 18 Wall. 129, 21 L. Ed. 929. This is the first case in which the supreme court of the United States had occasion to say that no one had an inalienable right to deal in intoxicating liquors prior to the fourteenth amendment, and that no new privileges and immunities were created for him by that amendment. Such a question could not have arisen prior to the fourteenth amendment which was adopted in the year 1868. And it appears that in the subsequent cases that court has uniformly dealt with the question as involving intoxicating beverages. This is the kind against which the states have authority to protect the local public.

Code 1906, § 1746, forbids traffic only in intoxicating liquors.

It can hardly be denied that the prohibition movement is directed against intoxicating liquors. This is what public opinion condemns and it is what the legislature dealt with. Up to this time there had been no thought of going further into the regulation of the conduct of citizens or in the restriction of their activities. It may be that when the larger evil is eradicated, attention will be fastened upon smaller real or imagined evils. It may be that if it is found to be impossible to enforce the laws against the intoxicating liquors the legislature may concede the idea of prohibiting the use of devices in the sale of certain liquids which render it difficult to prove violation of the law. But the legislature has not done this yet. We have not advanced so far. This extreme has not yet become necessary.

Code 1906, § 1746, prohibits the sale of vinous liquors. Grape juice is a vinous liquor even before it is fermented. Is it not sold in unfermented form every day, and has the right of dealers to sell it ever been questioned? It is a fact that this beverage contains a slight proportion of alcohol. All malt liquors are intoxicating to some extent, however slight. In fact, no malt liquor has yet been brewed which did not contain some alcohol to preserve it. Certainly all malt liquors known to the legislature were intoxicating.

Spirituous liquors are such as contain spirits of alcohol, but it is generally held by the courts that, in order to come within the meaning of statutes prohibiting sales of such liquors, it must appear that alcohol is contained to a sufficient extent to make the liquors in question intoxicating.

If the word "alcoholic" is not intended to designate intoxicating beverages, then it is the only word used to describe certain condemned liquors, and all the rest apply to such as will produce intoxication. The statute also includes "other drinks which if drunk to excess will produce intoxication." Now, such other drinks covered by the statute must of necessity contain alcohol in order to be intoxicating. On that particular point in the paragraph there can be no mistake as to the meaning of the legislature. The "other drinks," in addition to those already enumerated, contain alcohol in sufficient quantity to produce intoxication when drunk to excess, are also condemned. These drinks are alcoholic drinks. But it is specially provided that these other drinks are condemned only when they will produce intoxication when drunk to excess. If every liquor which contains some alcohol, whether enough to produce intoxication or not, is to be condemned, then this last clause defining the forbidden "other drinks" has no meaning whatever and is surplusage. In fact, the word "intoxicating" used in the statute is entirely unnecessary unless our construction here insisted upon is correct.

We are aware that this court upheld the action of the trial court in the case of *Adams v. Berry*, in which the lower court gave a peremptory instruction for the plaintiff on proof that the liquid sold by Berry contained about two per cent. of alcohol, but it appeared in that case that whatever might be the quantity of alcohol in the liquid, it was sufficient to produce intoxication and did in fact intoxicate the man who drank it for the purpose of testing it. And in the case of *Edwards v. City of Gulfport*, 95 Miss. 148, 49 South. 620, the court was dealing with a liquid which contained four and six-tenths per cent of alcohol. It was shown to be a malt liquor and that two bottles of it would intoxicate an average man. In that case the court did not hold that any liquor which contains any alcohol is necessarily an alcoholic liquor within the meaning of the statute. In fact the court said that the defendant could not complain of the failure of the court below to define for the benefit of the jury what malt and intoxicating liquor was, because it was said the defendant did not ask for such an instruction.

*James R. McDowell*, assistant attorney-general, for appellee.

This case was tried in the court below on an agreed statement of fact that the defendant sold a beverage known as "Brewett," containing a small per centum of alcohol but not enough to make the beverage intoxicating even when drunk to excess. On the trial in the court below the court instructed the jury that they should find the defendant guilty as charged if they should find from the evidence beyond a reasonable doubt that the beverage contained any alcohol. The court below refused instructions asked by the defendant to the effect that unless there was a sufficient quantity of alcohol in the beverage to make it intoxicating the defendant should be acquitted. This appeal involves the interpretation of Code 1906, § 1746.

The intention of the legislature, with regard to the statute in question, must be determined from the language of the statute. It is to be presumed that the legislature intended to prohibit the sale of every liquor and beverage in any way alcoholic; and not only alcoholic liquor but also vinous and malt liquor.  *Reyfelt v. State,* 73 Miss. 415 ; *Marks v. State,* 48 South. 864.

We do not contend that everything which contains alcohol must be prohibited from sale under Code 1906, § 1746.  Cologne, bay rum, spirits of camphor, hair tonic, and in fact many other commodities, contain some trace of alcohol for preservative purposes.  Many medicines contain alcohol.  But it is a dangerous precedent to begin to allow the sale of beverages admittedly containing alcohol in slight amount, on the theory that such beverages, while containing alcohol, contain so little in proportion that there are no accompanying intoxicating effects.  What will intoxicate one person possibly will not intoxicate another.

In Code 1906, § 1746, the words, "other drinks which if drunk to excess, will produce intoxication," are not meant to qualify the words, "vinous," "spiritous," "alcoholic," "malt," but are inserted in the statute to cover any omission which might have been made in enumeration of classes of drinks unclassified by the prohibiting words quoted.

Learned counsel for appellant contend that the court should define what proportion of alcohol a liquor intended as a beverage should contain in order to come under the prohibition of the statute, the specific argument being made that the beverage must contain enough alcohol to make it intoxicating in some degree when drunk to excess.  But how can this be ascertained before the beverage is actually imbibed ?  Shall this court say that one per centum, or two per centum or ten per centum of alcohol shall be the limit beyond which it shall be illegal to proceed in the mixing and selling of beverages ?  This would certainly be

an unwarranted assumption. Had the legislature intended to fix a certain per centum for intermixture of alcohol in beverages, it would have worded the statute differently.

It would be impossible to make proof in many cases that some certain questionable beverage was or was not intoxicating merely by showing its effect on the human system. . The actual specific drink would have been consumed, and the state could not oftentimes be able to prove similarity to samples exhibited before the jury.

What is "Brewett?" Its name would indicate that it was a brewed drink possibly similar to beer although containing less alcohol. What is the object in selling "Brewett?" We may presume it to be offered as a substitute, in our prohibition state, for beer, less harmful than beer. Certainly it is not intended for medicinal purposes solely. Appellant was not selling it for medicinal purposes. Appellant is not a druggist, nor a physician. But its similarity in taste to other stronger brewed drinks, presumably alcoholic beer, is doubtless the leading influence causing its sale. Now, if the beverage "Brewett" does contain any alcohol and if its purposes are as a substitute for stronger brewed drinks, the ban of the law, under Code 1906, § 1746, should be applied. For the intent of the legislature in passing the statute was to do away, at one fell swoop, with all liquors which contain alcohol and also all liquors which if drunk to excess will intoxicate.

The court is not warranted in defining what are alcoholic liquors except by following the statute. 17 Am. & Eng. Enc. Law (2d ed.) 198; notes 2 L. R. A., 408; 76 Iowa, 243.

This is a test case. If this court shall hold that this particular beverage, "Brewett," is not prohibited from sale under the statute, why may not every drug store, every soda-fountain stand, dispense it to women and children? If it is a brewed article, it doubtless contains malt, and belongs to the extensive

beer family without having the intoxicating feeling and effect given by beer. Was it the intent of the legislature to encourage the sale of these make-shifts? Where would such a policy lead? What will be the probable effect on children, accustomed to drinks of this character, as regards their choice of beverages when they grow older and naturally desire something stronger in effect?

In the *Edwards case* the appellant urged the court to reverse the judgment on the ground that the court below failed to define what was an alcoholic liquor. The safe ground here is to construe the statute literally, and avoid all entangling complications resultant from technical presumptions. *Elder v. State,* 50 South. 370; Black on Intox. Liq. § 34.

A wide latitude is allowed to the legislature in dealing with the malodorous liquor question. Outlawed liquors cease to be property, and may be seized and destroyed. The owner of a building in which intoxicating liquors are sold becomes amenable to the law. The legislature may pass laws which in their results will ruin or depreciate the business of a brewer or distiller, and such laws will be constitutional. The state is the unit of government, and its police powers must be given the fullest scope. Accordingly this statute should be construed in its general scope, as written.

Argued orally by *J. N. Flowers,* for appellant, and by *James R. McDowell,* for appellee.

ANDERSON, J., after stating the facts as above, delivered the opinion of the court.

The paragraph of section 1746 of the Code of 1906, which is the ordinance of the city under which the defendant was convicted, is as follows: "If any person shall (a) sell or barter, or give away to induce trade, or keep for sale or barter, or to be

given away to induce trade, any vinous, alcoholic, malt, intoxicating, or spirituous liquors, or intoxicating bitters, or other drinks, which if drunk to excess will produce intoxication, in any quantity less than one gallon, without having a license therefor in pursuance of this chapter," etc. The language, "which if drunk to excess will produce intoxication," qualifies the terms "vinous, alcoholic, malt, intoxicating, or spirituous liquors, or intoxicating bitters, or other drinks." There are alcoholic drinks which are known to the law to be intoxicating. Within this class are alcohol, wine, beer, ale, porter, whisky, brandy, gin, rum, and perhaps others. Such liquors, according to the common understanding, are intoxicating. The courts take judicial notice of the fact that they are alcoholic liquors, and will produce intoxication when drunk to excess. 23 Cyc. 61, 62, 63; 17 Am. & Eng. Ency. of Law (2d ed.) pp. 198, 199, 200, 201. There will be found collated in these two authorities the cases on this subject. In a case where the liquor in question belongs to this class, it is not necessary for the state to prove that it will intoxicate when drunk to excess; while, on the other hand, if it is not within this class which the court judicially shows are intoxicating, it is necessary for the state to prove that if drunk to excess it will cause intoxication. The term "alcoholic" is a general term which seems to have been thrown in rather for good measure than for any purpose. The statute is directed against alcoholic intoxicants. The sale of alcoholic liquors is prohibited provided they contain sufficient alcohol to intoxicate when drunk to excess.

The history of what is commonly known as the "prohibition movement" in this state, which resulted in the enactment of the statutes on this subject now in force, shows that it was directed against the sale of intoxicating liquors. Construing all these statutes together, it is apparent that the object of the legislature was to prohibit the sale of intoxicating liquors. This

is clearly demonstrated by sections 1747, 1748, 1749, 1750, 1752, 1755, 1758, 1759, 1765, 1767, 1773, 1776, 1791, 1794, 1797, and 1798 of Code 1906, and also chapter 117 of the Laws of 1908, which is a memorial to congress, to enact a law to prevent the issuance of United States revenue license to any person selling "intoxicating liquors" in any locality where the sale is prohibited by local laws.

It is contended that the case of *Edwards v. City of Gulfport*, 49 South. 620, is authority for the instructions given in these cases for the state. The liquor sold in the *Edwards case* was "Pabst Mead," containing 4.6 per cent. alcohol to each bottle; and the testimony showed that two bottles of it would intoxicate an average man. The court charged the jury that, if the liquor sold was a malt or alcoholic liquor, they should find the defendant guilty, whether shown to be intoxicating or not. Judge WHITFIELD uses this language in that case: "This case falls squarely within the case of *Reyfelt v. State*, 73 Miss. 415, 18 South. 925. On the evidence in this case it is perfectly manifest that a conviction is proper on either one of two grounds: First, that the liquor was shown to be both alcoholic and malt liquor; and, second, that it was shown to contain enough alcohol to make an average man drunk if he drank two bottles." *Marks v. State*, 159 Ala. 71, 48 South. 864, is referred to as authority for the *Edwards case*. It is true that in the *Marks case* (reviewing the statute substantially the same as section 1746, Code 1906) the Alabama court held that the language, "which if drunk to excess will produce intoxication," did not relate to each and all the liquors preceding it. However, the court held further in that case (exactly contrary to what was held in the *Edwards case*): "Whether a beverage containing 1.46 per cent. of alcohol by weight, and 1.88 per cent. by volume, and .20 per cent. maltose, making $2\frac{1}{2}$ teaspoonfuls of alcohol per pint, is an alcoholic, spirituous, vinous, malt, or intoxicating liquor,

or whether if drunk to excess will produce intoxication, is a question of fact for the jury." The *Reyfelt case* is not authority for the *Edwards case*. In the former the liquor sold was home-made wine; and the court held it was unlawful to sell it regardless of the opinion of witnesses that it would not intoxicate. The decision of the court was manifestly correct, because wine is one of the liquors which has an accepted judicial meaning, and judicially known to be intoxicating when drunk to excess.

It is contended on behalf of the state that the purpose of the legislature was to prohibit the sale of all drinks as beverages containing alcohol in any quantity, however small; the object being not alone to lessen drunkenness, but to put out of reach of the people drinks which have a tendency to create a thirst for intoxicants. There is nothing in our statutes, nor in the history of the "prohibition movement," to indicate such purpose.

If the charges complained of in the instant cases, and which were authorized by the *Edwards case,* are the law, then if a person should sell, as a beverage, a barrel of water with a teaspoonful of alcohol in it, he would violate this statute; and so would the owners of soda fountains, selling the usual cold drinks, using various extracts in the same, containing a small portion of alcohol for their preservation.

These views necessitate, in my judgment, the overruling of so much of the *Edwards case* as holds that the charge in question in that case was a correct statement of the law. That case stands alone, unsupported, and is unsound.

In both of these cases the court should have instructed the jury peremptorily to find a verdict for the defendant, because neither of the drinks sold was shown to be intoxicating when drunk to excess. In case No. 14,307, if the "Malt Ale" sold had been proven to be ordinary ale, then the jury would have

been authorized to convict, whether the ale was shown to be intoxicating or not when drunk to excess; ale being in the class of liquors which are judicially known to be intoxicating.

The judgments in these cases, both of them, are, therefore, reversed and the causes remanded.

*Reversed.*

SMITH, J., delivered the following dissenting opinion.

I feel constrained to differ with both of my Brethren in the construction put by them upon the statute in question. When this statute was under review in *Reyfelt v. State,* 73 Miss. 416, 18 South. 925, this court said: "The statute, for a violation of which the appellant was convicted, makes it unlawful to sell, *inter alia,* any 'vinous or alcoholic' liquor. The defendant sold home-made wine made from the grape and from blackberries, which wine he and his witnesses swore would not intoxicate. He asked the court to instruct the jury to acquit, if it believed from the evidence the wine would not produce intoxication. This the court declined to do, but charged the jury to convict if the sale of wine was proved. This action of the court was correct. The legislature, believing in chemistry, and that the process of fermentation of the juice of the grape will produce alcohol, has seen fit to prohibit the sale of such product, and, regardless of the opinion of the witnesses that this prohibited article would not intoxicate, the sale was unlawful, for the legislature prohibited such sales because it thought that alcoholic wines would, in some instances, intoxicate."

This was a square adjudication that the words, "which if drunk to excess will produce intoxication," did not qualify the terms "vinous, alcoholic, malt, intoxicating, or spirituous liquors." The court in its opinion said nothing about judicial notice, but held that it was unnecessary to prove that vinous or alcoholic liquor was intoxicating for the sole reason that the

legislature had so ordered.    The same argument with reference to the qualification of these words by the words, "if drunk to excess will produce intoxication," was made in that case by counsel for appellant, as was made in the case of *Edwards v. Gulfport*, 49 South. 620.    This latter case announced no new construction of the statute, but simply followed the *Reyfelt case*. The legislature has adopted the construction put upon this statute in the *Reyfelt case* by twice re-enacting it.    I do not think, therefore, that these cases should be overruled; neither do I think they should be qualified to the extent of saying that: "When the beverage sold contains a sufficient quantity of alcohol to constitute the dominant quality of the beverage, and is the thing on account of which it is sold, there is then a violation of the law, even if it be conclusively shown that the beverage will not intoxicate."    The statute does not provide that alcohol must be the "dominant quality of the beverage," but in express terms prohibits the sale of alcoholic liquor without reference to its intoxicating quality and irrespective of the amount of alcohol which it contains.    *Gilbert v. Husman,* 76 Iowa, 241, 41 N. W. 3; *Sawyer v. Botti* (Iowa), 124 N. W. 787.

The words "alcoholic liquor" have a plain and definite meaning; that is, a liquor containing alcohol, and, since the legislature has not limited the amount of alcohol such liquor must contain in order to come within the prohibition of the statute, this court has no right to do so.    The legislature meant to establish and fix a certain guide for the courts in administering this statute, and did not intend to leave it to the juries to say when alcohol was, or when it was not, the dominating quantity of the liquor.

## SUGGESTION OF ERROR.

After the delivery of the foregoing opinions counsel for appellee presented a vigorous suggestion of error.

MAYES, C. J., delivered the opinion of the court in response to the suggestion of error:

The same appellant is here on appeal in two cases; one being No. 14,306 and the other No. 14,307. For convenience I follow the method adopted by Judge ANDERSON, and discuss the two cases in this opinion. Both cases charge the unlawful sale of "vinous, malt, alcoholic, intoxicating, and spirituous liquors." Both originated in prosecutions conducted for a violation of the ordinance of the city of Jackson in the court of the police justice of the city. The ordinances of the city prohibiting the sale or barter of intoxicating liquors are rescripts of chapter 115, Laws 1908. In discussing these cases, therefore, I shall deal with them as though they arose under the act.

The facts in both cases are agreed to, and on the trial in the circuit court the agreed facts constituted all the testimony. In case No. 14,306 it was agreed that the beverage sold was "Brewett," and contained eighteen one hundredths of one per centum of alcohol by volume, and thirteen one hundredths of one per centum of alcohol by weight. There is no proof in the record as to how this "Brewett" is made—that is to say, whether or not it is a malt liquor—nor is it proven to be vinous, or spirituous. The agreed facts show only that it contains a small quantity of alcohol. Under the agreed facts this beverage, therefore, if a prohibited liquor, must be such a prohibited liquor as falls within the class designated as "alcoholic liquor." Case No. 14,307 charges the same offense; but the agreed facts show that the beverage in that case was "Malt Ale," and contained two and seventy-one one hundredths of one per centum of alcohol by volume and two and twelve one hundredths of one per centum of alcohol by weight. In the latter case the agreed facts concede that it is a malt liquor.

It may be also stated that courts take judicial notice of the fact that any liquor containing more than two per centum of

alcohol by weight will intoxicate, as a matter of fact, if drunk to excess. See full report of case of *United States v. Cohn,* 2 Ind. T. 474, 52 S. W. 41. In the *Cohn case,* in the proof found in the report of the case, it is shown by expert witness that beverages containing more than two per centum of alcohol will intoxicate, and the trial court in that case took judicial notice of it. It is also shown in that case that the government fixed two per centum of alcohol, by weight, as in truth constituting an intoxicating liquor. I feel, therefore, that I am safe in saying that I shall take judicial notice of a fact so well established by proof and legislative action.

Chapter 115, p. 116, Laws 1908, enumerates certain classes of liquors which cannot be sold, or bartered, under any condition. The statute prohibits the sale of such liquors as it expressly names, without regard to their intoxicating or nonintoxicating quality, and without reference to what quantity of alcohol may be contained in them. If a party is charged with merely selling an "alcoholic liquor," and such liquor is neither vinous, malt, or spirituous, if the quantity of alcohol is so negligible as not to constitute the beverage sold an "alcoholic liquor," of course there can be no conviction of a sale of such liquors, even if it be shown that in truth there is some alcohol in the beverage. There must be enough alcohol in it to make it "alcoholic" as the statute says; but I shall discuss this particular subject later.

The liquors expressly named which the law prohibits from being sold are "vinous, alcoholic, malt, or spirituous liquors, or intoxicating bitters." The sale of these liquors is prohibited without reference to whether in fact they intoxicate, but because it is well known that this class of liquor is of an intoxicating character. After expressly prohibiting the sale of the character of liquors named above, the statute then prohibits the sale of another class not enumerated, which are "all other drinks which

if drunk to excess will produce intoxication." If a beverage be sold which does not fall within the first class named, then, only, is it necessary for such beverage to intoxicate before there can be a successful prosecution for a violation of the liquor laws. I confess that it is difficult to conceive of a drink that will intoxicate, which would not be included in the description of the expressly forbidden liquors; but the legislature, knowing the evasions resorted to by violators of the law and their activity in devising concoctions for this purpose, thought it safe to put a general prohibition on the sale of all other drinks which would intoxicate. In the *Reyfelt case,* 73 Miss. 415, 18 South. 925, it was held that, where a party was charged with selling any one of the expressly enumerated liquors prohibited to be sold, it was not necessary to go further and show that the liquor was intoxicating. In the case of *Edwards v. City of Gulfport,* 49 South. 620, it was again held that, wherever the liquor fell within the classes expressly prohibited by the statute, it was not necessary to prove that it was of an intoxicating character, and the court further held that the clause in the statute, which prohibited the sale of "other drinks which if drunk to excess will produce intoxication," stood alone in the statute, having no reference to, or in any way qualifying, the preceding portion of the statute which prohibited the sale of any "vinous, alcoholic, malt, or spirituous liquors," etc. This holding of the court is supported by the cases of *State v. Auditor, etc.,* 68 Ohio St. 635, 67 N. E. 1062; *United States v. Cohn,* 2 Ind. T. 474, 52 S. W. 38, 44.

In the latter of the above cases, the court, construing a statute similar to this, very pertinently asked: "If it were intended that only such of these as could be shown to be intoxicating should be included, why name them at all? Why not simply say that all intoxicating liquors and drinks should be prohibited?" In brief, the statute says that "vinous, alcoholic, malt, intoxicating,

or spirituous liquors, or intoxicating bitters," cannot be sold at all, and then it says that it shall be lawful to sell all other drinks except such "other drinks which if drunk to excess will produce intoxication." If there is any beverage that can be conceived of by the ingenious violators of the law, not falling within the class named above which will not intoxicate, and which yet proves a desirable beverage for those inclined to purchase same for its character as an intoxicant, its sale may continue. I confess that I can conceive of no drink that can be devised not covered by the broad terms of the statute. It is not only held by this court that, where the laws expressly name and prohibit the sale of certain beverages as constituting beverages of an intoxicating character, it is immaterial that such beverage does not in fact intoxicate; but there is much authority elsewhere for this proposition. In the case of State v. York, 74 N. H. 125, at page 126, 65 Atl. 685, at page 686, it is said: "Where an act expressly prohibits the sale or keeping for sale of a particular liquor or class of liquors, it is not necessary to allege in the indictment thereunder, or to prove upon the trial, that the particular liquor or class of liquors, the sale of which is forbidden, is intoxicating." In the case of State v. Frederickson, 101 Me. 37, at page 43, 63 Atl. 535, at page 537, 115 Am. St. Rep. 295, at page 299, it was shown in that case that the statute prohibited the sale of "wine, ale, porter, strong beer, lager beer or other malt liquors and cider," and the court said: "In determining whether or not a liquor is to be regarded as intoxicating under this enumeration, it is entirely immaterial whether it is intoxicating in fact. As was well said in State v. O'Connell, 99 Me. 61, 58 Atl. 59: 'It is not for the jury to revise the judgment of the legislature and determine whether liquor is or is not in fact intoxicating.' When it appears that a liquor comes within the scope of the forbidden enumeration, that moment its intoxicating character becomes fixed by law,

and its nonintoxicating character, as a matter of fact, becomes entirely immaterial with respect to the application of the statute." In the cases above cited will be found multiplied authority for this statement of the rule. See, also, *State v. Auditor,* 68 Ohio St. 635, 67 N. E. 1062, *supra.*

I do not think the constitutionality of statutes of this character can be successfully controverted. The police power of a state is broad enough to prohibit the sale of those things which it considers destructive of the health, the good morals, and the peace of its citizens. If the state has this power, it is necessarily vested with the authority to make its laws effective, and the subterfuges and disguises resorted to by the ingenious violators of the liquor laws are as well known to the legislator and the judges as to those who violate the law. Knowing the schemes resorted to by those who would destroy the prohibition laws and make them farcical by their failure to give that protection from the evil of intoxicants which is their design and purpose, the legislature has met all schemes of those who would evade, by prohibiting the sale of all subterfuges. It has prohibited the sale not only of intoxicants, but of that character of liquors that go hand in hand with intoxicants; that is, have the character of intoxicants, though in truth they do not intoxicate. The police power of the state is not so impotent and restricted as that it cannot combat and repel all evasions. We hear much of the constitutional rights; but no man's rights are infringed upon by this act of the legislature, and the construction which I give it, and which this court has given it, unless such person desires to engage in the sale of intoxicants. Surely the state can say to such person that you cannot profit in the sale of this contraband article of merchandise, no matter how small the quantity sold, or by what name you call it. If this great power of the state could be thus thwarted by those engaged in criminal acts, it would indeed be an impotent thing. In criminal and in civil

law, fraud, disguise, and pretense, whatever form may have been assumed in an effort to subvert the good faith of the law, have not been subtle enough to evade the legislatures and the courts for long.

I have no hesitancy in saying that the sale of "Malt Ale," no matter what the quantity of alcohol in same may be, is expressly prohibited by the statute, and any person selling same has violated the law. The agreed facts in case No. 14,307, where the appellant agrees that he was selling a liquor known as "Malt Ale," constitute a violation of the law. Not only did he violate the law by selling "Malt Ale," as stated in the agreement, but the facts in that case show that this liquor contains two and seventy one hundredths per centum of alcohol by volume, and two and twelve one hundredths per centum of alcohol by weight, which is an intoxicating liquor. I have more difficulty in applying the law to the second case, No. 14,306, because the agreed facts do not show that "Brewett" is a malt drink. I do not feel warranted, in the absence of proof of this fact, in assuming that it is a malt drink. If it were proved that "Brewett" was a malt drink, I would unhesitatingly be in favor of an affirmance of this case, because no malt drink can be lawfully sold. Therefore "Brewett," if a prohibited liquor, must be classed under that section of the statute which prohibits the sale of any alcoholic drink. In this view of it I cannot make up my mind to declare, as a matter of law, that a beverage which contains only eighteen hundredths of one per centum of alcohol by volume, and thirteen hundedths of one per centum by weight, is, under the law, an alcoholic drink. It seems to me that the quantity of alcohol in this drink is too negligible to be classed as an alcoholic drink. In many states where the sale of "alcoholic drinks" is prohibited, the legislature has fixed a standard by which courts may be governed in determining whether a drink is alcoholic or not. Some of the states

provide that a drink shall be such when it contains one per centum of alcohol; some have raised the percentage higher. If the legislature had said what per centum of alcohol should constitute an alcoholic drink, the statute would be free from any doubt; but, since they have not done so, I do not feel warranted in saying that so small a quantity as is agreed to be contained in "Brewett" can be said to make the drink an alcoholic drink. The legislature has not prohibited the sale of any drink containing alcohol; but it has prohibited the sale of an "alcoholic drink." When can a drink be said to be "an alcoholic drink?" It seems to me that any beverage containing one-half of one per centum of alcohol has no longer a merely negligible quantity of alcohol, and any beverage having this percentage of alcohol, by whatever name called, is an "alcoholic drink" within the meaning of the statute.

I concur with Judge ANDERSON in the reversal of case No. 14,306, but think that the judgment in case No. 14,307 should be affirmed both because it is shown that appellant sold "Malt Ale," expressly prohibited from sale by the statute, and further because the liquor is an intoxicating liquor.

It follows from these views that the former judgment in case No. 14,307, reversing same, shall be vacated, and a judgment of affirmance now entered. In case No. 14,306 the suggestion of error is overruled, and on retrial the court below is directed to give a peremptory instruction to discharge defendant on the agreed facts in same.

*Judgment in one case affirmed, in the other reversed.*

ANDERSON, J., concurred in the order reversing cause No. 14,306, but dissented from the reasons assigned therefor. In cause No. 14,307, ANDERSON, J., dissented *in toto,* adhering in both cases to the view expressed in his original opinion.

SMITH, J., delivered the following opinion, concurring in one case and dissenting in the other.

As I must adhere to the views expressed by me when these cases were first before the court, it follows therefrom that I concur with Brother MAYES in holding that the liquor sold in cause No. 14,307, known as "Malt Ale," containing two and seventy-one hundredths per centum of alcohol by volume, and two and twelve one hundredths per centum of alcohol by weight, is both a malt and an alcoholic liquor, and therefore its sale is prohibited by the statute.    It also follows that I dissent from the view expressed by him that the liquor sold in cause No. 14,-306, which contained eighteen hundredths of one per centum of alcohol by volume, and thirteen hundredth of one per centum of alcohol by weight, is not an alcoholic liquor.    In my opinion the amount of alcohol which a beverage contains is immaterial. Its sale is prohibited by the statute if it contains any alcohol.