ROBERTSON, Justice:
The appellant, James Jolliff, Jr., was indicted by the grand jury and convicted in the Circuit Court of Wilkinson County, of wilfully, unlawfully and feloniously attempting :
“[T]o impede and intimidate B. F. Blak-eney, ' a duly appointed, qualified and acting enforcing ágent and officer of the Alcohol Beverage Control Division of the State Tax Commission of the State of Mississippi, in the discharge of his lawful duty as such enforcing agent and officer of said Alcohol Beverage Control Division, in checking and inspecting the beer license and beer stock of Gladys Davis, doing business as Gladys’ Cafe, in the Town of Woodville, Wilkinson County, Mississippi, by then and there placing himself in front of said B. F. Blakeney and physically blocking and impeding said Blakeney’s every effort to legally inspect and check the beer license issued said Gladys Davis and check the beer stock of said Gladys Davis then and there in the said cafe operated by her in said Town of Woodville.”
He was sentenced to serve a term of two years in the state penitentiary and to pay a fine of $500. However, the sentence to the penitentiary was suspended and appellant was placed on probation for a period of five years.
Inasmuch as the appellant had been elected a supervisor of Wilkinson County in District One thereof during the interim between the commission of the offense and his trial, and had entered upon the duties of the office, the circuit court removed him from the office of supervisor in accordance with the provisions of Section 4053 Mississippi Code 1942 Annotated (1956).
The appellant urges this Court to reverse his conviction and reinstate him in the office of Supervisor, District One, Wilkinson County.
The appellant contends that the agents of the Alcoholic Beverage Control Division of the State Tax Commission did not have the right, without a valid search warrant, to go behind the counter and inspect the beer license and beer stock of the cafe owner.
The facts are these. About 1:15 p.m. on September 5, 1967, B. F. Blakeney and James Sumrall, enforcing agents and officers of the Alcoholic Beverage Control Division of the State Tax Commission, entered the cafe known as Gladys’ Cafe in the Town of Woodville, Mississippi, for the purpose of checking the beer license to see whether it was in date and inspecting the beer stock to determine whether it was Mississippi-taxed beer. Agent Sumrall went behind the counter and began to check the beer stored in coolers beneath the counter. Agent Blakeney attempted to follow Sumrall behind the counter through an opening in it.
The appellant, James Jolliff, Jr., tapped Agent Blakeney on the shoulder and asked him if he had a search warrant, and, upon being assured by Blakeney that he did not have a search warrant and did not need one, Joliff advised Blakeney that he could not go behind the counter and that he would have to get out of the cafe. There is some dispute in the testimony as to whether or not Jolliff, in blocking Blakeney’s attempt to go behind the counter, had physical contact with him. Blakeney testified that Jolliff placed his hand on his right shoulder; Sumrall testified that Jolliff pushed Blakeney back. Jolliff testified that he did not touch Blakeney. Blakeney placed Jolliff under arrest for interfering with an officer in the discharge of his lawful duties, and he later was indicted by the grand jury for this offense.
This was a routine inspection which agents and employees of the Tax Commission were in the habit of making to determine primarily whether or not the tax laws *236 of the State were being violated. The principal duty of the Tax Commission, of course, is to collect taxes due the State, and the Commission has been granted certain rights and powers by the Legislature to aid it in enforcing these tax laws.
It is not suggested nor contended by the State that Officer Blakeney or Sumrall had a search warrant, nor, for that matter, that probable cause existed for the issuance of a search warrant. As agents of the State Tax Commission, they were about their business of routinely inspecting privilege licenses, and beer, wine, and whiskey stocks, to see if- these intoxicating beverages had escaped Mississippi taxation.
We do not think that it could be seriously contended that the State did not have the right or power to impose reasonable conditions upon the issuance of a privilege license to sell any intoxicating beverage.
The general rule is stated very succinctly in 33 American Jurisprudence 371-72 Licenses Section 52 (1941):
“As a general rule, a state or governmental authority which has power to deny a privilege altogether may grant a license therefor upon such conditions, not requiring the relinquishment of constitutional rights, as it sees fit to impose, and the person to whom the license is granted takes it upon such conditions.”
This is particularly true with reference to the traffic in all kinds of intoxicating beverages. Such beverages when used to excess can be and frequently are detrimental to the health and welfare of the people generally. Excessive use of such intoxicating beverages is the catalytic agent triggering the commission of many crimes. Such excessive use is at the bottom of many of the miseries afflicting mankind.
The late Justice Alexander, writing for this Court in Stone, State Tax Commissioner v. Farish, 199 Miss. 186, 23 So.2d 911 (1945), beautifully expressed the logic of reposing in the Legislature, as the representative of all the people, the undoubted right, under the police power, to regulate, control, and impose conditions upon the manufacture, sale, and use of intoxicating beverages. He stated the thought of the Court in these graphic words:
“Until the passage of Chapter 171, Laws 1934, the sale of intoxicating liquors, including beer, was forbidden. By that act, the sale of beer of an alcoholic content not exceeding four percent by volume was conceded. The conditions under which such business was vouchsafed reflected a legislative policy, judicially recognized as promoting the general welfare, that there be, if not an outlawry, a controlled restraint. The controversy here illustrates the conflict between the judgment of the people expressed through their Legislature, which sees in the business a menace to the purposes of the Constitution expressed in its preamble, and the will of the individual, who, under the banner of its bill of rights, makes assault upon these statutes. The traffic, for reasons which the courts have never questioned, has been put upon legislative leash. More than this, the citizens of each county have been conceded the right to foster or forbid its traffic at their will. It would seem, both practical and logical that if the commodity itself is beholden to the people, and paroled to its judgment or caprice, its commerce could remain submissive to the legislative judgment which has set it at large upon its good behavior.
“Those zvho would avail of the legislative privilege of engaging in its sale accept the privilege under the conditions attached to its exercise.” Id. at 196, 23 So.2d at 913. (Emphasis added).
This Court long ago in Fuller v. City of Jackson, 97 Miss. 237, 52 So. 873 (1910), decided that, according to the common understanding, the term “alcoholic liquors” does include wine and beer. The Court said:
“There are alcoholic drinks which are known to the law to be intoxicating. *237 Within this class are alcohol, wine, beer, ale, porter, whisky, brandy, gin, rum, and perhaps others. Such liquors, according to the common understanding, are intoxicating. The courts take judicial notice of the fact that they are alcoholic liquors, and will produce intoxication when drunk to excess.” Id. at 248, 52 So. at 874. (Emphasis added).
However, this does not mean that the Legislature cannot limit its meaning as the term is used by it in particular legislation.
The Legislature did limit the meaning of the term “alcoholic beverage” in the Local Option Alcoholic Beverage Control Law, Sections 10265-01 through 10265-40 Mississippi Code 1942 Annotated (Supp.1966), when it said:
“The words ‘alcoholic beverage’ mean any alcoholic liquid capable of being consumed as a beverage by a human being, but shall not include wine containing not more than four per cent (4%) of alcohol by weight and shall not include beer containing not more than four per cent (4%) of alcohol by weight.” § 10265-05. (Emphasis added).
In that law, the Legislature did grant the right to the State Tax Commission to make administrative inspections, when it used these words:
“(a) The State Tax Commission, under its duties and powers with respect to the Alcoholic Beverage Control Division, therein, shall have the following powers, functions and duties:
* * * * * *
“(11) To inspect, or cause to be inspected, any premises where alcoholic liquors intended for sale are manufactured, stored, distributed or sold, and to examine, or cause to be examined all books and records pertaining to the business conducted therein.” § 10265-17. (Emphasis added).
However, we have been unable to find in the Light Wines and Beer Act, Sections 10207-10265 Mississippi Code 1942 Annotated (1952) and (Supp.1966), any similar grant of authority by the Legislature.
It is true that Section 10223, which is very lengthy, contains this language:
“It shall be the duty of all peace officers to enforce within their jiirisdiction the provisions of this section and they shall frequently visit all licensed premises within their jurisdiction to determine whether such permittees are complying with the laws; and shall promptly investigate all complaints made to them by any citizen relative to any alleged violations of this section within their jurisdiction.” (Emphasis added).
However, in order to determine the intent of the Legislature, we must study the above-quoted language in its juxtaposition with other portions of this detailed section.
Section 10223 opens with a declaration that it shall be unlawful for the holder of a permit authorizing the sale of beer or wine at retail to allow or permit on the premises seven specific offenses then described in detail. These listed offenses are such as selling wine or beer between the hours of midnight and 7 a.m., selling to any person visibly drunk, or any insane person, or habitual drunkard, or any person under 18 years of age. Then down in the body of the section we find the language above quoted.
In our opinion this language has to do with the enforcement of the law as to the seven specific offenses listed, or others similar in nature and kind. We note also that the term “peace officers” is used. This term generally includes sheriffs and their deputies, constables, marshals, members of the police forces of cities, and other officers whose duty is to enforce and preserve public peace. People v. Bissonette, 327 Mich. 349, 42 N.W.2d 113, 115, 116; 31A Words and Phrases p. 315. It would not include officers and agents of the State Tax Commission.
*238 The ABC law itself limits ABC officers, agents, and inspectors with this language:
"Such agents and inspectors are hereby declared to be police officers in enforcing the provisions of this act and in making arrests for violations of this act or in making searches and seizures hereunder * * § 10265-11. (Emphasis added).
Officers Blakeney and Sumrall, as enforcing agents of the Alcoholic Beverage Control Division, without a valid search warrant, were not in the discharge of their lawful duties when they attempted to go behind the counter and inspect the beer stock of Gladys Davis, doing business as Gladys’ Cafe. The appellant, therefore, was not guilty of attempting to impede and intimidate B. F. Blakeney in the discharge of his lawful duty.
Inasmuch as Jolliff had authority from the owner, Gladys Davis, to take charge of the cafe during her absence, he did have standing to question the authority of Agent Blakeney. The appellant did not use unreasonable force in blocking this unauthorized inspection.
We come now to the authority of this Court, upon a reversal of the conviction and a discharge of the appellant, to reinstate him in the public office to which he had been elected.
In accordance with the mandatory requirements of Section 4053 Mississippi Code 1942 Annotated (1956), the trial court removed the appellant from office, using these words:
“And it further appearing to the Court that in addition to the punishment and sentence therein imposed against this Defendant on said felony conviction, it is the mandatory duty of the Court, under Section 4053 of the said Mississippi Code of 1942, Annotated and Recompiled, to adjudge the Defendant removed from said public office now held by him.”
Section 4053 is as follows:
“If any public officer, state, district, county, or municipal, shall be convicted of misconduct or misdemeanor in office, or of any felony or other infamous crime, or of corruption in office or peculation therein, or of gambling or dealing in futures with money coming into his hands by virtue of his office, the court, in addition to such other punishment as may be prescribed, shall adjudge the defendant removed from office, and the office of the defendant shall thereby become vacant. And if any such officer be found by inquest to be of unsound mind during the term for which he was elected or appointed, or shall be removed from office by the judgment of a court of competent jurisdiction, or otherwise lawfully, his office shall thereby be vacated; and in any such case the vacancy shall be filled as provided by law.” (Emphasis added).
We said in Bucklew v. State, 192 So.2d 275 (Miss. 1966):
“Removal of a public officer from office does not constitute part of the judgment of conviction. It is a consequence imposed in the interest of the public and of sound government.” Id. at 276.
It is, however, in the nature of additional punishment for a public office holder, and in this case was included in the judgment finding the appellant guilty and imposing sentence upon him.
The Board of Supervisors of Wilkinson County, after appellant was removed from office, appointed an interim supervisor for District One to fill the vacancy created by appellant’s removal.
The Wilkinson County Board of Election Commissioners issued a notice of special election to be held on May 28, 1968, to fill the office of Supervisor of District One for the remainder of appellant’s term of office. This Court enjoined the holding of that special election and any other special *239 election for the office of Supervisor of District One, pending decision of this case on the merits. Jolliff v. State and Jolliff v. Wilkinson County Board of Election Commissioners, 210 So.2d 47 (Miss.1968). The peculiar posture of this case is that an interim supervisor is now serving, and no successor has been elected to fill the vacancy.
We feel that the judgment in this particular case must be treated as an entirety and that when the judgment of conviction, upon which the removal from office was based, is reversed and the defendant discharged, it follows as a matter of course that the defendant should be restored to his former office.
Now, we would be confronted with an entirely different situation if a successor had been regularly elected to the office according to law, and we want to make it crystal clear that our ruling is based entirely on the unusual and peculiar facts and posture of this case alone.
We are mindful of the fact that a different result was reached in State of Washington ex rel. Guthrie v. Chapman, 187 Wash. 327, 60 P.2d 245, 106 A.L.R. 640 (1936), and Becker v. Green County, 176 Wisc. 120, 184 N.W. 715, 186 N.W. 584 (1921). The language of the statutes involved in those cases differed from the language of the Mississippi statute, and we think that those cases are readily distinguishable,
The judgment of conviction is reversed, and the appellant discharged. The appellant will be reinstated in the office of Supervisor from District One of Wilkinson County as of the day that the judgment of this Court becomes final.
Judgment reversed and appellant discharged. Appellant will be reinstated in office when this judgment becomes final.
All Justices concur.