STONE, STATE TAX COMMISSIONER, *v.* FARISH.

(In Banc. Nov. 26, 1945. Suggestion of Error Overruled Jan. 14, 1946.)

[23 So. (2d) 911. No. 35987.]

J. H. Sumrall, of Jackson, for appellant.

**Culkin, Laughlin & Thames**, and **R. M. Kelly**, all of Vicksburg, for appellee.

Argued orally by **J. H. Sumrall**, for appellant, and by **J. D. Thames**, for appellee.

**Alexander, J.**, delivered the apinion of the court.

Appellee is the holder of a permit as a wholesale distributor of beer under the trade name of John's Distributing Company. Section 10238, Code 1942. Such permit was cancelled by the Commissioner and appellee sought injunction to prevent revocation. Upon final hearing, the temporary injunction was made final. The Commissioner appeals, and the decree having been based upon the unconstitutionality of the statutes authorizing revocation, such issue alone is here presented.

For the facts surrounding the action by the Commissioner, we look to appellee's original bill and the sworn answer, together with the exhibits to both, the matter having been set down by the court for hearing thereon. The chancellor denied tender of oral testimony by the Commissioner and decided the matter upon the issue of legislative competency.

The record discloses that the Commissioner on October 20, 1944, issued notice of revocation specifying seven grounds therefor. These include "persistent and continuous failure" to comply with various regulations and provisions of the statutes, including the allegation that the business was in fact conducted by a brother of appellee, C. John, who by his own admission is conducting a whisky business upon the premises in violation of Section 10238, Code 1942. The notice stated "you are further notified that, unless within ten days of this notice you show cause, if any you can, why such permit should not be revoked and canceled," revocation would be effected. Appellee filed answer to this notice, and after repeated delays the matter was heard on January 30,

1945, and upon request continued until April 12, 1945, on which date final order of revocation was entered by the Commissioner in which all members of the Commission joined. This order found that the specifications set out in the notice had been substantiated and further, upon grounds elaborately set forth, that C. John was not merely the agent of appellee but the owner and operator of the business.

The applicable statutes as found in the 1942 Code are as follows:

"Section 10213. . . . Provided, that the Commissioner shall revoke any permit granted by authority of this Act to any person who shall violate any of the provisions of this Act or the revenue laws of this State relating to engaging in transporting, storing, selling, distributing, possessing, receiving or manufacturing of wines or beer, or any person who shall hereafter be convicted of the unlawful sale of intoxicating liquor, or any person who shall allow or permit any form of gambling or immorality on the premises described in such permit.

"The penalty for the violation of any of the provisions of this Act in addition to other penalties provided by law shall be revocation and cancellation of such permit granted."

"Section 10257. Revocation of permit.—If any person exercising any privilege taxable under the provisions of this Act, shall wilfully neglect or refuse to comply with the provisions of this Act, or the provisions of House Bill No. 26 (Div. 1, this chapter), General Laws of the State of Mississippi 1934, or any rules or regulations promulgated by the Commissioner under authority of this Act, the Commissioner shall be authorized to revoke the permit theretofore issued to such person, after giving to such person ten days notice of the intention of the Commissioner to revoke such permit; and any person whose permit shall have been revoked by the Commissioner, shall be thereafter prohibited from exercising any privilege taxable under the provisions of this Act. The Commissioner may, however, for good cause shown, grant a new

permit upon such conditions as the Commissioner may prescribe.''

Sections 10213 and 10244 require permittee to file bond conditioned upon compliance with the statutes and ''with the rules and regulations prescribed by the Commissioner,'' and Section 10238 requires an oath of compliance.

Although the opinion of the learned chancellor, incorporated into the record by his decree, expresses the view that the statutes were ''inherently void,'' the final decree was grounded upon an absence of due process. Let us examine the legislative power in the light of our constitution.

Until the passage of Chapter 171, Laws 1934, the sale of intoxicating liquors, including beer, was forbidden. By that act, the sale of beer of an alcoholic content not exceeding four percent by volume was conceded. The conditions under which such business was vouchsafed reflected a legislative policy, judicially recognized as promoting the general welfare, that there be, if not an outlawry, a controlled restraint. The controversy here illustrates the conflict between the judgment of the people expressed through their Legislature, which sees in the business a menace to the purposes of the Constitution expressed in its preamble, and the will of the individual, who, under the banner of its bill of rights, makes assault upon these statutes. The traffic, for reasons which the courts have never questioned, has been put upon legislative leash. More than this, the citizens of each county have been conceded the right to foster or forbid its traffic at their will. It would seem both practical and logical that if the commodity itself is beholden to the people, and paroled to its judgment or caprice, its commerce could remain submissive to the legislative judgment which has set it at large upon its good behavior.

Those who would avail of the legislative privilege of engaging in its sale accept the privilege under the conditons attached to its exercise. They bind themselves with an oath. The wholesaler pledges not only his word but

puts his goods under bond in acknowledgment of the conditions inherent in the privilege. He exercises no right, is given nothing that is property. It is true that ordinarily a license may have aspects of property, but the control here retained strips it of that quality which requires divestiture only by judicial process. Much less is it an inalienable right; it has become but an alienable privilege. What the Legislature may absolutely forbid, it may absolutely control. It is no answer that beer not exceeding a four percent alcoholic content may be legally possessed and sold. Even this diminished potency is viewed askance by the Legislature for it has reserved the right of confiscation upon condition broken. Section 10258, Code 1942. If the Legislature has the power to invest this commodity with the power of depriving the citizen of his liberty under conviction, it would seem an inevitable consequence that it could keep it under legislative surveillance in the interest of protecting the citizens, with the power to take away its liberty in turn upon breach of the terms of its parole.

Discussion of the legislative power upon an assumption that we are here dealing with private legal rights is out of place. Yet, even such rights end where the conflicting rights of others begin. Here the right and authority of the Legislature is absolute, and we do not inquire where appellant's private rights end for, as such, they have never had a beginning. As heretofore stated, considered as a privilege it is valuable and once conceded may be enjoyed within the confines of the statutory conditions.

A permit or license of the kind here involved is not a property or contract right. Its revocation need seek no judicial sanction, nor is a judicial proceeding available to forbid its proper exercise. 30 Am. Jur., Intoxicating Liquors, Secs. 73, 76, 134-142, inclusive; Clark v. State, 169 Miss. 369, 152 So. 820; Baur, Fed. Administrative Law, Sec. 511; Landis, The Administrative Process, pp. 38, 48, 97; Black, Intoxicating Liquors, Sec. 194. Administrative power, despite its alleged abuses, is not to be shouted down with mere slogans. The din of partizan

debate unfits an intent mind for serene thought and obscures the truth that the Legislature, once aware of judicial interference, could, at a stroke, abolish the entire traffic. MaKing Products Company v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046. There is a vast difference between depriving a citizen of property without due process of law and revoking a privilege by due process of procedure.

Our inquiry, therefore, goes a bit further. While we are unanimous in the view that the legislative mechanism for complete control transgresses no legal or constitutional barriers, we are led to examine whether the right of revocation was here properly exercised.

The statute requires notice to the permit holder, but not, in express terms, a hearing. Both were, however, given. While absolute power excludes judicial review where exercised under the conditions of its bestowal, it does not imply arbitrary or capricious exercise.

Administrative questions belong within the legislative orbit, while judicial questions of necessity fall within the judicial province. Bauer, op. cit. supra, Secs. 506, 509, 511; Landis, op. cit. supra, p. 147. Judicial oversight can never be absolutely forbidden, yet it is measured by the same considerations which apply to direct legislative acts. The Commissioner is pro hac vice, an extended arm of the Legislature.

Those who stand aghast at the gradual accession of administrative power are blind to the truth that while the approving voice is that of the courts, the fashioning hands are the hands of the Legislature. Indeed, an apt constitutional inquiry may well include the power of the judiciary to substitute or impose its judgment upon the legislative branch. See Cumberland Tel. and Tel. Company v. State, 135 Miss. 835, 100 So. 378.

There is thus exhibited an exercise of legislative discretion whose finality is based upon the constitutional separation of powers. Den ex dem. Murray v. Hoboken Land & Imp. Co., 18 How. 272, 59 U. S. 272, 15 L. Ed. 372; Monongahela Bridge Company v. United States, 216 U. S.

177, 30 S. Ct. 356, 54 L. Ed. 435. Exact demarcation between the two functions has always been difficult. A few courts have leaned backward in their stand lest they seem to waver in their championship of sacred private rights. Other courts finding in this posture an ungainly and unprogressive gesture have leaned too far forward in their anxiety to avoid a backward leaning. Devotees of the former position argue that it is against constitutional and democratic fundamentals to accord to a board or commissioner the power of life and death over the business of the citizen. The phrase is thought-provoking, begets caution ad comnpels analysis. Yet, such protestations are to be muted with the sober reflection that the power which would seek to discontinue the life of the business here involved is the creator of the life itself. It indeed had that power and exercised it. There is no legal reason why the citizen may not, in availing of this act of legislative grace, pursue an unmolested and profitable existence. If perchance its life is strangled, it is because of entanglement with the administrative cords by which it is bound. Too much rope is always a hazard in the hands of one with too little concern.

The courts have proceeded with circumspection in those areas of human rights which are mined with menace to our ship of state. Their duty is to follow those paths cleared by those whose courage and resources of detection have revealed a safe way. This course has been clearly defined and made familiar to judicial pilotage.[1] Recog-

[1]The subject continues to provoke research. The announced rule is too well fortified to admit of doubt as to judicial trends. In addition to cases cited in the opinion and the briefs, the subject is elaborated in the following: 137 A. L. R., p. 803, (Annotation); Ann. Cas. 1917A, 1019 (Annotation); Pound, Administrative Justice, 41 H. L. Rev. 114; Rosenberry, Administrative Law and Constitution, 23 Am. Pol. S. C. Rev. 32; Frankfurter, The Task of Administrative Law, U. of Pa. L. Rev., May 1926; Dickinson, Administrative Law and The Fear of Bureaucracy, Am. Bar Ass'n Journal, Oct. 1928, p. 513, Nov. 1928, p. 597; Dickinson, Judicial Control of Official Discretion, 22 Am. Pol. S. C. Rev. 275; Satterfield, Judicial Review of Decisions of Adminis-

nition of a devotion to basic rights is not best attested by those who, impatient of some suitable season, lodge the weight of their censure against the most convenient victim, unaware that he walks abroad solely at the behest of the representatives of that popular sovereignty whose right to regulate what they deem a social threat is thereby put to test.

Nor do we find in this case an occasion to stray aside into those by-paths where the bodyguards of bureaucracy are beset by an aroused and suspicious citizenry, and the favored phrases of the law are bandied about with missionary zeal. For all we know, the Legislature may have seen in the traffic a portent comparable with the threat of bureaucracy. It is not our function nor concern to speculate thereon.

There is not here involved the right of the Commissioner to withhold permit in the first instance. Nor is there presented his right to act capriciously or without cause. We do not suggest what exceptional circumstances would open the door to judicial inquiry. There must exist some of the grounds stated in the statute. Such existence is here disclosed by the notice and its specifications, and confirmed by the Commissioner's order. Such order is therefore final. Our decision goes no further than a consideration of the particular subject matter of the legislation here involved and the facts disclosed by this record.

We are of the opinion that the learned chancellor was in error in making perpetual the injunction, and that the injunction ought to have been dissolved.

Reversed and decree here for appellant.

trative Tribunals, Miss. L. Journal, Vol. 4, p. 184; Wiel, Administrative Finality, 38 H. L. Rev. 447; Albertson, Judicial Review of Administrative Action, 35 H. L. Rev. 127; Hart, Administrative Justice and the Supremacy of Law, 29 Geo. L. J. 543; Pound, Administrative Process, 30 Am. Bar. Ass'n Journal 121; Morganthau, Implied Limitations on Regulatory Powers, 11 U. Chi. L. Rev. 91. For answer to threat of abuse of discretion, see Munn v. State of Illinois, 94 U. S. 113, 24 L. Ed. 77; Clark v. State, 169 Miss. 369, 380, 152 So. 820; Address, Francis Biddle, 27 Am. Bar. Ass'n Journal 660; Address, Judge John J. Parker, Vol. 16, Miss. L. Journal, pp. 357, 370.