LUCEDALE VENEER CO. *v.* ROGERS.

Division A. Oct. 23, 1950.

No. 37591 (48 So. (2d) 148)

614

In Banc. Overruled May 14, 1951, 53 So. (2d) 69.

Satterfield, Ewing, Williams & Shell, Butler, Snow & O'Mara and Heidelberg & Roberts, for appellant.

616

T. H. Hillman and W. S. Murphy, for appellee.

618

Original opinion:

**Lee, J.**

Rogers filed his claim with the Workmen's Compensation Commission against Lucedale Veneer Company and its insurer for compensation benefits on account of an alleged hernia. The matter was heard by a Commissioner, and the claim was disallowed. Upon a review

by the full Commission, the order of the hearing officer was affirmed. Thereupon, Rogers appealed to the Circuit Court of George County, where the order of the Commission was reversed and the benefits were awarded. The Veneer Company and its insurer appeal here.

The benefits were claimed under paragraph (f), Section 8, Chapter 354, Laws 1948, which is as follows:

"In all cases of claims for hernia it shall be shown to the satisfaction of the compensation commission:

"1. That the descent of the hernia immediately followed as the result of sudden effort, severe strain, or the application of force directly to the abdominal wall;

"2. That there was severe pain in the hernial region;

"3. That such prostration resulted so that the employee was compelled to cease work immediately;

"4. That the occurrence of the hernia was noticed by the claimant and communicated to the employer within forty-eight (48) hours.

"5. That the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician or surgeon within forty-eight (48 hours) after such occurrence."

The Commission, in denying such benefits, by its order held. (A) That the proof failed to show satisfactorily that the condition required by Items (1), (2), (3) and (5), supra, were met. (B) As to Item (4), supra, that Rogers failed to return to work the next day, because he did not have transportation; but that, on the following day, he did report for work, and on being advised by the foreman that his job had already been filled, he then told the foreman that he could not work, and wanted to go to a doctor for treatment. And (C) the evidence failed to show that Rogers lifted any heavy object, suffered any unusual strain, fell, or otherwise did anything to cause a hernia.

While the appellants make several assignments of error, these, in fact, all deal with the proposition that the court should have affirmed the finding of the Commission

that, under the law and the evidence, the proof was insufficient to establish a compensable injury.

Thus it is necessary to recapitulate the facts and consider their sufficiency under the applicable law. Such facts were established as follows: Rogers had worked for appellant eight months and had never had a hernia. About 9:30 in the morning of May 2, 1949, he was taking several slabs off of a conveyor belt, which was about waist high. These slabs each weighed eight or ten pounds, and probably more. He experienced a sensation like a bee sting in the region of his left groin; the second time, it was worse; it affected him in the afternoon when he went home, and he suffered severe pain that night. He did not return to the plant the next day, because his car was broken down and he was without transportation. On the following day, Wednesday, he reported to his foreman about 6 o'clock in the morning, and asked if there was another man in his place; and upon being advised that such was true, he stated that he was unable to work anyhow, and that he had returned to tell the foreman of his injury on the previous Monday. The foreman sent Rogers to a doctor, and this examination disclosed that he was suffering from a hernia. Rogers had worked the balance of the day on Monday without making any complaint.

From the above facts, it is clear that Rogers suffered a hernia while taking slabs off of the conveyor belt. When the height of the belt and the weight of the slabs are taken into consideration, it is obvious that the descent of the hernia immediately followed as a result of sudden effort or severe strain, or both. This proof fully met the conditions of Item (1), supra.

Rogers' description that the sensation was like a bee sting, and the pain became worse in the afternoon and severe that night, conclusively established the existence of pain, required under Item (2), supra.

It is true that Rogers did not fall prone upon the floor, or instantly cease work. However in an effort

to determine the meaning of prostration, we must consider its synonyms. Some of the words similar in meaning are, exhaustion, fatigue, lassitude, and weakness. As a result of this occurrence, Rogers said that he was not able to work, and the doctor verified this opinion. "Immediately" in a strict sense signifies forthwith, without delay and straightway. Yet, in a broader sense, it has been held to mean as soon as an act can, with reasonable diligence, be performed. "As soon as may be, after the happening of some event; as soon as practicable under the circumstances; . . . within a reasonable time, under the circumstances . . ." 42 C. J. S., Immediately, p. 392. Pain affects different persons in different degrees. Some can bear little pain—a slight prick in the arm sends one into paroxysms of fear and suffering, while another may bear the most excruciating pain, without whimper, in Spartan fortitude and courage. Certainly it was not the intention of the law to require employees, every time they have a pain in the abdomen, to quit work and go to a doctor for examination, lest such pain be caused from the descent of a hernia and they be deprived of the benefits of workmen's compensation. ██ ██ The construction must be sensible as well as liberal. Under Items (4) and (5), supra, a claimant has 48 hours within which to get a doctor and to report to his employer, after noticing the occurrence of the hernia. In view of these provisions, the fair construction is that the ceasing of work must be in a reasonable time, under the circumstances, and the complaint must be confirmed and reported within 48 hours.

██ ██ The statute intended to provide compensation for hernia, caused or superinduced by trauma, as contradistinguished from one of congenital origin. And we must not, by a strained construction, deny to a sufferer the benefits accruing from a traumatic hernia, by consigning him to the status of one who has been thus afflicted, or potentially afflicted, from birth.

Suffice it to say, under this statute, when, as a result of sudden effort or severe strain, or both, there is severe pain in the hernial region, and the employee is rendered unable to work, if the pain is sufficient to require the services of a doctor within 48 hours, and if the occurrence is communicated to his employer within that time, the hernia is compensable.

The Commission was in error in its construction of the law, and the application of such construction to the facts of this case. For this prejudicial error, the circuit court, under Section 20, Chapter 354, Laws of 1948, was correct in reversing the order of the Commission and in entering judgment for Rogers.

Affirmed.

OPINION ON SUGGESTION OF ERROR.

Kyle, J.

This case was decided by Division A on October 23, 1950. The opinion rendered at that time by Justice Lee is reported in 48 So. (2d) at page 148. Appellant thereafter filed a suggestion of error, and in view of the importance of the question presented the suggestion of error has been considered by the Court in banc.

Appellant's attorneys in their brief on suggestion of error and the attorneys who have filed supplemental briefs as amici curiæ in support of the suggestion of error have made an exhaustive reargument of the points set forth in appellant's original assignment of errors, and have vigorously questioned the right of the court on appeal to set aside an order of the Compensation Commission on the ground that the order is based upon findings of fact which are not supported by the evidence or upon an erroneous interpretation of the applicable provisions of the statute, Chapter 354, Section 8(f), Laws of 1948.

The statute provides that the circuit court on appeal "shall review all questions of law and of fact",

and that if no prejudicial error be found the order of the commission shall be affirmed and remanded to the commission for enforcement, but "If prejudicial error be found, the same shall be reversed and the circuit court shall enter such judgment or award as the commission should have entered." The right of appeal and the right to have the court review all questions of law and of fact would be of little value to the party who felt aggrieved at the order of the commission if the court on appeal were unable to reverse the order of the commission in a case where the court found that such order was based upon findings of fact which were contrary to the weight of the evidence or upon an erroneous interpretation of the applicable provisions of the statute. That principle, we believe, has never been adopted by any state which has a workmen's compensation act containing provisions for a review on appeal of all questions of law and of fact similar to our own; and among the cases cited by appellant's attorneys in their very able brief in support of contentions made by them on other points involved in this appeal there are many cases in which the court on appeal has reversed the order of the commission on the ground that the order was based upon findings which were not supported by the weight of the evidence or upon an erroneous interpretation of the provisions of the statute itself.

This is a hernia case, and as a preface to the discussion of the points presented in the appellant's suggestion of error, we quote again the provisions of paragraph (f) of Section 8, Chapter 354, Laws of 1948, in which the facts to be proved in such cases are set forth as follows:

"In all cases of claims for hernia it shall be shown to the satisfaction of the compensation commission:

"1. That the descent of the hernia immediately followed as the result of sudden effort, severe strain, or the application of force directly to the abdominal wall;

"2. That there was severe pain in the hernial region;

"3. That such prostration resulted so that the employee was compelled to cease work immediately;

"4. That the occurrence of the hernia was noticed by the claimant and communicated to the employer within forty-eight (48) hours.

"5. That the physical distress following the occurrence of the hernia was such as to require the attendance of a licensed physician or surgeon within forty-eight (48) hours after such occurrence".

The commission, in denying the appellee's claim in its order held: (A) That the proof failed to show satisfactorily that the conditions required by Items (1), (2), (3) and (5), supra, were met. (B) That, as to Item (4), supra, the testimony showed that Rogers failed to return to work on the day after the injury because he did not have transportation; but that, on the following day, he did report for work, and, on being advised by the foreman that his job had already been filled, he then told the foreman that he could not work, and wanted to go to a doctor for treatment. (C) That the evidence failed to show that Rogers lifted any heavy object, suffered any unusual strain, fell, or otherwise did anything to cause a hernia.

In the opinion filed by Justice Lee on October 23, 1950, the facts disclosed by the record were set forth as follows: Rogers had worked for appellant eight months and had never had a hernia. About 9:30 on the morning of May 2, 1949, he was taking several slabs off of a conveyor belt, which was about waist high. These slabs each weighed eight or ten pounds, and probably more. He experienced a sensation like a bee sting in the region of his left groin; the second time, it was worse; it affected him in the afternoon when he went home, and he suffered severe pain that night. He did not return to the plant the next day, because his car was broken down and he was without transportation. On the following day, Wednesday, he reported to his foreman about 6 o'clock in the morning, and asked if there was another man in his

place; and upon being advised that such was true, he stated that he was unable to work anyhow, and that he had returned to tell the foreman of his injury on the previous Monday. The foreman sent Rogers to a doctor, and this examination disclosed that he was suffering from a hernia. Rogers had worked the balance of the day on Monday without making any complaint.

Appellant's attorneys in their suggestion of error contend that the appellee's proof was insufficient to show that the descent of the hernia immediately followed as a result of sudden effort or severe strain, or that there was severe pain in the hernial region, or that such prostration resulted that the appellee was compelled to cease work immediately. And appellant's attorneys in their briefs cite many cases from other states in support of their contention which upon careful examination are found to be clearly distinguishable from the case that we now have before us. We cannot in this opinion review all of these cases, but we shall mention a few of them.

In the case of Arduini v. General Ice Cream Company, 123 Conn. 43, 192 A. 314, 114 A. L. R. 1333, which is cited by appellant's attorneys in their brief, the claimant's medical history revealed that in May 1932 he had been operated upon for hernia on the left side and that on May 14, 1936, a pre-employment physical examination showed that the rings on both sides were enlarged. The claimant's injury was alleged to have been sustained on August 8, 1936, and the claimant testified that he felt a "snap", but that he felt no pain and it did not hurt. The Connecticut statute, unlike the Mississippi statute, required that proof be made that the hernia resulted from "accidental injury" accompanied by evidence of pain and that inability to work followed such accident within one week. The court reversed the findings of the compensation commissioner and disallowed the claim.

In the case of Sciortino v. E. Salia & Co., Inc., Mo. App., 157 S. W. (2d) 535, which is cited by appellant's attorneys in their brief, the opinion states that the medical testi-

mony was to the effect that plaintiff was suffering with a hernia and weakened condition of the inguinal ring prior to the occasion of his lifting the box which resulted in the injury, and that the strain of the lifting aggravated the hernia due to intra-abdominal pressure; and the court held that the injury itself, though unexpected and unforeseen, did not constitute an accident, as defined by the Missouri statute.

In the case of McPhee & McGinnity Co. v. Industrial Commission of Colorado, 67 Col. 86, 185 P. 268, 269, which is cited by appellant's attorneys in their brief, and which is referred to again hereafter, the testimony showed that the claimant ten years before had a double hernia, and the court held that the evidence upon which an award of the Industrial Commission was made was insufficient to establish the ''recent origin'' of the hernia, that its ''appearance was accompanied by pain'', and that ''it was immediately preceded by some accidental strain suffered in the course of the employment'', as required by the Workmen's Compensation Act of 1915. Laws 1915, p. 544. In that case the court reversed a judgment in favor of the plaintiff and directed that judgment be entered in favor of the defendant.

In the case of O'Brien v. Wise and Upson Company, Inc., 108 Conn. 309, 143 A. 155, the court held, by a divided court, that in order to satisfy the requirement of proof ''that inability to work immediately followed such accident'', such inability must follow an injury presently ''or without any substantial interval of time'', so that when, as in that case, the employee continued his work for a week after the claimed injury, he was not entitled to compensation. As stated by the Connecticut Supreme Court, in the later case of Arduini v. General Ice Cream Company, supra, as a result of the decision in the O'Brien case and the considerations advanced in the dissenting opinions therein, the general assembly at its next session (1929) amended the act by substituting for the requirement of proof, ''that inability to work immediately fol-

lowed such accident", Pub. Acts 1927, c. 307, Section 4, one for proof that the hernia resulted from an accidental injury "accompanied by evidences of pain (and) that inability to work followed such accident within one week." [123 Conn. 43, 192 A. 315.] Pub. Acts 1929, C. 242, Section 2.

In the case of Royal Indemnity Company v. Beckmann, 66 Ga. App. 369, 17 S. E. (2d) 910, 914, which is cited by appellant's attorneys in their brief, the court said that "A hernia resulting to an employee from an act done in the ordinary performance of his duties, and done in a manner not unusual or unexpected, is not an injury by accident. . . . The mere straining in lifting the drum, or barrel in the ordinary manner required for its lifting, if such strain causes a hernia, is not an accident in the sense of its meaning in the Compensation Act causing an injury resulting in hernia." From the reading of the opinion in the Royal Indemnity case, we find, however, that the language used in the Georgia statute is different from the language used in the Mississippi statute. The language of the Georgia statute requires that the claimant show "that the hernia immediately followed an accident". The language of the Mississippi statute is that the claimant show "That the descent of the hernia immediately followed as the result of sudden effort, severe strain, or the application of force directly to the abdominal wall". The Mississippi statute does not require that the proof show "that the hernia immediately followed an accident".

In the brief filed by the attorneys amici curiæ in support of appellant's suggestion of error reference is made to the case of Rudd v. Fairforest Finishing Co., 189 S. C. 188, 200 S. E. 727, 728. In that case the court had under consideration the provisions of the South Carolina statute, Code 1942, Section 7035-2, which required that the proof show "That the hernia or rupture immediately followed an accident", and the court held that the proof failed to

show that the hernia immediately followed the accident which was testified to by the appellant.

In the case that we now have before us we think that the proof was sufficient to show that the descent of the hernia immediately followed as the result of sudden effort or severe strain, within the meaning of paragraph (f) of Section 8 of the Mississippi Workmen's Compensation Act. As the circuit judge stated in his opinion, "Certainly the lifting of slabs from a moving belt, when the slabs are at waist height and must necessarily be lifted without leaning against the belt, required sudden effort." We also think that the bee sting sensation testified to by the appellee was sufficient to show severe pain in the hernial region, and that the appellee's inability to work on the following day satisfied the requirements "that such prostration resulted that the employee was compelled to cease work immediately."

We think that on reason and authority these conclusions are sound.

In the case of Borodaeff v. Province Line Dairy, Inc., 109 N. J. L. 25, 160 A. 513, 514 the court had under review a judgment of the Mercer County Court of Common Pleas which reversed the order of the Workmen's Compensation Bureau dismissing claimant's petition for compensation. The claimant's petition had been dismissed by the Compensation Bureau on the ground that the proof failed to show that the descent of the hernia immediately followed a sudden effort or severe strain. On appeal by the employee the Mercer County Court of Common Pleas reversed the order of the Bureau disallowing the claim and entered judgment for the claimant. From that judgment the employer prosecuted a writ of error.

The court, after stating the facts disclosed by the record, said: "Of course, this is not a case of 'real traumatic hernia.' But the employer concedes that the proof presents a compensable case of hernia caused by strain in every respect except the one above mentioned,

namely, 'the descent of the hernia immediately followed the cause.' " The court in its opinion then set out the requirements of the New Jersey statute relating to proof of a hernia claim, and added:

"Thereby it seems clear that the phrase 'immediately followed the cause' should not be construed to mean 'instantly followed the strain.' Probably in most such cases there is some appreciable lapse of time between the cause and the descent. No doubt the word 'immediately' is sometimes used in the sense of 'instantly,' but that is by no means its only meaning. Webster's New International Dictionary gives the following definition of 'immediately': 'Without intermediary; in direct connection or relation; in a way to concern or affect directly or closely; without intervention of any person or thing; proximately.'

"We think that the phrase 'immediately followed the cause' should be held to mean 'soon enough and in such manner as to make it appear clear that the descent was the effect of the strain and pain complained of which forced cessation of work.'

"This is apparent when we consider the additional requirement of the statute that the pain and prostration 'were of such severity that the same was noticed by the claimant and communicated to the employer within twenty-four hours after the occurrence of the hernia.' We believe that the view we take finds support in the case of Yannone v. Hind Steel Wire Works, 154 A. 409, 9 N. J. Misc. 501. The real purpose of the precautions laid down by the Legislature in the section here involved is to protect the employer from claims for hernia not actually caused by the accident. In this case the only medical witness said, 'I frankly think it was caused by the accident,' and considering the other undisputed evidence, we think the judgment for the employee was entirely justified under the rule stated."

In the case of Consolidated Vultee Aircraft Corporation v. Smith, 63 Ariz. 331, 162 P. (2d) 425, 426, the court held

that proof that descent of hernia was caused either by a fall on April 3 or by strain as a result of lifting on May 15, that claimant noticed a protrusion in his groin on the evening of May 15, and that within a few days medical examination disclosed the protrusion to be a hernia was sufficient to show that the ''descent of the hernia occurred immediately following the cause'', so as to be compensable. The court in that case said that the phrase, ''descent of the hernia occurred immediately following the cause'', should be given a liberal construction in favor of the injured workman.

In the case of Central Surety & Insurance Corporation v. Industrial Commission of Colorado, 84 Colo. 481, 484, 271 P. 617, 618, the court held that, under the provisions of the Colorado Workmen's Compensation Act requiring an employee seeking compensation for hernia to prove that it was immediately preceded by accidental strain suffered in the course of his employment, an ''accidental strain'' is one which is unforeseen, unexpected, and unintended; ''strain'' being the physiological effect or injury due to excessive tension or effort. In that case the statute required that the claimant prove that the appearance of the hernia was accompanied by pain, and '' 'that it was immediately preceded by some accidental strain suffered in the course of the employment.' '' C. L. Section 4454, as amended, Laws 1923, p. 744, Section 14. And in that case the court, in commenting upon the meaning of the word ''immediately'' as used in the phrase '' 'that it was immediately preceded by some accidental strain suffered in the course of the employment' '', said that the word ''immediately'' has different meanings, depending upon the purpose sought to be accomplished, and as used in the Workmen's Compensation Act, paragraph 80, providing that hernia, to be compensable, must have been immediately preceded by accidental strain in course of employment, does not mean instantaneously, but that there may intervene between cause and effect an interval of time sufficient for effect to follow cause in

the usual course of nature. The court in its opinion commented upon the case of Poccardi v. Public Service Commission, 75 W. Va. 542, 84 S. E. 242, L. R. A. 1916A, 299, and the case of McPhee and McGinnity Company v. Industrial Commission, 67 Colo. 86, 185 P. 268, which is cited in the brief filed by appellant on his suggestion of error, as follows:

"In Poccardi v. Public Service Commission, supra, where the hernia was not discovered until the second day after a workman lifted a heavy iron pipe, the court said:

" 'The article brought to our attention in the brief says traumatic hernia completely develops immediately or in a day or two after the blow. Common sense suggests that a rupture from a strain might develop more slowly than one caused by a blow.'

"The court was not construing a statute such as ours; but the case is useful as indicating that hernia caused by a strain does not always, if ever, develop instantaneously. Giving the statutory provision a liberal, reasonable construction, as we should do, we hold that the evidence was sufficient to support the finding of the Industrial Commission that the hernia was immediately preceded by an accidental strain.

"4. It is said that the case of McPhee & McGinnity Co. v. Industrial Commission, 67 Colo. 86, 185 P. 268, is controlling here, and requires a reversal. There are important points of difference between the facts in that case, as stated in the opinion, and the facts in the present case. There it appeared that the claimant was doing light work (planing); that the doctor's certificate stated that 'there is no direct history of any accident, such as lifting or straining'; that several years before that the claimant had a double hernia, for which he was operated upon, and that thereafter he wore a truss. These facts sufficiently distinguish that case from the present one."

The Colorado Court in the Central Surety & Insurance Corporation case then concluded its opinion as follows: "That Fugitt suffered a hernia; that it was directly

caused by a strain; that the strain was accidental; that it occurred while he was engaged in moving a heavy object, a service arising out of and in the course of his employment; that the injury was proximately caused by accident arising out of and in the course of such employment, and was not intentionally self-inflicted—all this, if not expressly admitted, is not denied, and has been clearly and abundantly proven by competent evidence. There is no evidence to raise even a suspicion of fraud in Fugitt's claim for compensation, or that the claim is otherwise than meritorious. To defeat such claim, counsel for the plaintiffs in error rely upon a strict, narrow, illiberal construction of the statutory provision concerning proof in hernia cases. The Industrial Commission found that Fugitt was entitled to compensation, and made an award in harmony with its findings. The district court confirmed the award. We believe that the findings are sustained by the evidence, and that the award and the judgment are right.''

The appellant's attorneys in their suggestion of error also say that the circuit court of George County and this Court ''have failed to give due credit to the findings of the commission'' and ''have also failed to make application of the law thereto as same existed when the alleged accident occurred.'' The findings of the commission, which are here brought under review, are (1) that the testimony showed that Rogers failed to return to work on May 3, 1949, the day following the date of the alleged injury, because he did not have transportation, and (2) that on the second day following, on May 4, 1949, he did report for work, and on being told that his job had been filled, he then told the foreman that he could not work and wanted to go to a doctor for treatment, and (3) that the evidence failed to show that the claimant lifted any heavy object, suffered any unusual strain, fell, or otherwise did anything to cause a hernia, while in the employ of the Lucedale Veneer Company.

The circuit court held, and this Court in the opinion rendered on October 23, 1950, also held that the above mentioned findings of the commission were not supported by the evidence adduced upon the hearing before the commission. In testifying before the commission Rogers described the injury that he had sustained on May 2 and the pain that he had suffered in the hernial region, and the record shows that the employer's attorney then asked the witness this question: "You didn't work May 3 but you intended to, and the reason you didn't was—,"; Roger's answer was, "No Sir; I was going to come back and report that to him," meaning the mill foreman. The employer's attorney then asked this question: "But you didn't, couldn't get in because you didn't have a car?" Rogers said, "That's right." Rogers' testimony, which was the only testimony in the record on this point, does not show that Rogers "failed to return to work on the day following the date of the alleged injury because he did not have transportation to the job." Nor does Rogers' testimony show that "he did report for work," on the second day following the date of the alleged injury, and on being told that his job had been filled, he then told the foreman that he could not work and wanted to go to a doctor for treatment. The testimony shows that Rogers sustained his injury on May 2 about 9:30 a. m., that he was "terribly sick" that night, that "the car broke down", and he could not return to the mill next day to report his injury, but did return to the mill on Wednesday, May 4, and reported his injury to the mill foreman. That, as we see it, is the proper meaning of Rogers' testimony on this point. The finding that Rogers' failure to return to work on May 3 was due to the fact that he did not have transportation to the job, and the finding that he did report for work on May 4, are based entirely upon inference, and both of those findings are contrary to the testimony of Rogers, which is the only testimony in the record relating to those two facts.

██ The testimony of the claimant was competent to prove his claim. His testimony as to the facts mentioned above is uncontradicted and in the absence of other competent proof we think refutes the finding of the commissioner that the claimant failed to return to work on May 3 because he did not have transportation to the job, and the finding of the commissioner that the claimant reported for work on May 4, and told the foreman that he could not work because his job had been filled.

██ Uncontradicted or undisputed evidence should ordinarily be taken as true by the triers of the facts. More precisely, evidence which is not contradicted by positive testimony or circumstances, and is not inherently improbable, incredible, or unreasonable, cannot be arbitrarily or capriciously discredited, disregarded, or rejected, even though the witness is a party or interested; and unless shown to be untrustworthy, is to be taken as conclusive, and binding on the triers of fact. 32 C. J. S., Evidence, Section 1038, page 1089.

In the case of Mobile, Jackson & Kansas City Railroad Co. v. Jackson, 92 Miss. 517, 46 So. 142, 143, the Court said that juries are the judges of the credibility of witnesses and of the weight of the evidence, but cannot arbitrarily and capriciously disregard unimpeached testimony supported by all the circumstances in the case. "Learned counsel for appellee", the Court said, "insist that the jury found that this was not true; but the jury had no right, arbitrarily, to make any such finding on the testimony in this record . . . Juries cannot arbitrarily and capriciously disregard testimony of witnesses, not only unimpeached in any of the usual modes known to the law, but supported by all the circumstances in the case."

In the case of Holmes v. Holmes, 154 Miss. 713, 123 So. 865, 866, in which this Court reversed the chancellor on his findings of facts, the Court said that "When the testimony in a case is reasonable, which is to say, is

not contrary to practical, everyday experience and observation, deals with facts rather than estimates or opinions, and is undisputed, the judicial duty is to act upon it, and there is no authority to refuse so to do; nor in such a situation may courts embark upon conjectures that undisputed, reasonable testimony may be untrue or mistaken, or that something else might possibly be true when there are no substantial grounds within the record upon which cogent and logical inferences may be drawn to that effect; and we fail to perceive any such grounds in this case.''

In the case of Tarver v. Lindsey, 161 Miss. 379, 137 So. 93, 96, the Court again reversed the chancellor on his findings of the facts, and in the opinion rendered in that case the Court said: ''We have written at length, because the finding of the chancellor upon the facts was adverse to the claimant, and the rule is that the finding of the chancellor on the facts must stand unless manifestly wrong, and this includes the reasonable inferences that may be drawn by the chancellor, as the trier of the facts. But we think the chancellor must have been influenced, as a matter of law, by some of the rather broad expressions found in some of our decisions, which, if disassociated from the facts of the cases in hand, would seem almost to outlaw claims of this character; whereas the real meaning of those expressions is to be interpreted as we have hereinabove stated. . . . Where, as in this case, the testimony of intelligent witnesses is undisputed, is reasonable in itself, and is in reasonable harmony with the physical facts and the facts of common observation among experienced persons, and the witnesses are unimpeached, then the trier of the facts must act on the testimony and cannot reject it, else trials might eventuate in arbitrary results, rather than in the product of judicial determination. It is better that courts may be sometimes wrong, may sometimes fail to find justice, than at any time they shall act arbitrarily, or be bound

by anything other than the record of the case as it is made out in court.''

We do not think that the findings ''that Rogers failed to return to work the next day because he did not have transportation'' and ''that on the following day he did report for 'work'', are justified by any testimony in the record.

In the case of Rudd v. Fairforest Finishing Company, 189 S. C. 188, 200 S. E. 727, 728, which is cited on other points in the brief filed by the appellant on this suggestion of error, the court said: ''While the findings of fact by the Industrial Commission will be upheld if there is any evidence on which it can rest, it must be founded on evidence, and cannot rest on surmise, conjecture or speculation.''

In Paulauskis' Case, 126 Me. 32, 135 A. 824, 825, which is cited in appellant's brief, the court said: ''The Industrial Accident Commission, while primarily an administrative body, exercises certain judicial functions. In the exercise of these functions it acts judicially. While it determines finally the trustworthiness and weight of testimony, its findings must be based on evidence. This would be true even if there were no express statutory mandate. Moreover, the statute requires that the merits of the controversy be decided 'from the evidence thus furnished.' R. S. c. 50, Section 34, now chapter 238, Section 34, P. L. 1919; Gauthier's Case, 120 Me. 73, 113 A. 28.''

The provisions of the statutes of the several states relating to court reviews of compensation awards on appeal are by no means uniform, as pointed out in the opinion rendered by the West Virginia Court in the case of Poccardi v. Public Service Commission, 75 W. Va. 542, 548, 84 S. E. 242, L. R. A. 1916A, 299. The West Virginia statute, under which that case was decided, accorded with the English Compensation Act which is referred to in the opinion rendered and the acts of several other states in which the power of court review has been limited to

questions of law. Under the Kentucky statute, (and this statute is mentioned for the reason that appellant cites one or more cases decided by the Kentucky Court), the court's power of review on appeal is limited to determining whether or not the Workmen's Compensation Board exceeded its powers, or the order, decision or award was procured by fraud, or is not in conformity to the provisions of the act, and if findings of fact are in issue, whether such findings of fact support the order, decision or award.

Under our own statute, it is expressly provided that the circuit court in cases of this kind "shall review all questions of law and of fact", and if no prejudicial error be found the order of the Commission shall be affirmed and remanded to the Commission for enforcement; but "If prejudicial error be found, the same shall be reversed and the circuit court shall enter such judgment or award as the commission should have entered."

The circuit court reviewed the questions of law and of fact presented on this appeal; and the circuit court found prejudicial error in that the Commission was in error in its construction of the law and in its findings of fact and in holding that the proof failed to show that Rogers was entitled to recover, and the circuit court reversed the order of the Commission and entered judgment for the claimant. That judgment was affirmed by this Court.

We have made a careful examination of the cases cited in the briefs filed on the suggestion of error, and also many other cases referred to in the cases cited and in which the courts have considered questions similar to those presented on this appeal. We believe that the opinion rendered by this Court on October 23, 1950, embodies a correct interpretation of the provisions of our own statute and a correct application of the provisions of the statute to the facts presented in the case that we have had under review. We believe that the opinion rendered is in accord with the principles laid down in

similar cases which have been decided by the courts of other states having statutes similar to our own. And for the reasons stated herein the suggestion of error is overruled.

Suggestion of error overruled.

**McGehee, C. J.** (dissenting).

My vote on the suggestion of error herein does not affect the result of the decision to overrule the same, since there are three judges in favor of affirming the decision of the trial judge in the case, but in view of the importance of the case as bearing on the question of what weight we shall give to the decision of the Workmen's Compensation Commission as an administrative agency, I am impressed with the views expressed in the dissenting opinion of Justice Alexander on that question.

In view of the uncertainty of the testimony as to how many veneer slabs the employee lifted or as to approximately how much they may have weighed, since the proof shows that they weighed from one ounce to eight or ten pounds, and he failed to testify clearly that they were even of a heavy weight at all, it is doubtful that the decision of the Workmen's Compensation Commission should have been disturbed, and especially in view of the fact that it is clear that the employee's failure to return to work on the next morning was due to the want of transportation, and that the commission could have reasonably concluded that his failure to go to work on the second morning, after having reported at the job about 6:00 a. m., was due to the fact that some one had then been put in his place. And consistent with the opinion that I have this day written, and believe, to be correct and in accord with the general legal jurisprudence of the country, in the case of City of Meridian v. David-

son, Miss., 53 So. (2d) 48, as to the extent to which the courts should review and disturb the finding of an executive or administrative agency, I am constrained to join in the dissent of Justices Alexander and Roberds.

**Alexander, J.** (dissenting).

The experience of years of operation under workmen's compensation statutes disclosed a necessity for placing hernia cases in a special category. Except where the origin was definitely traumatic the incidence and cause of the disability were susceptible of proof only by the injured workman. It was learned that a predisposition to hernia may follow a predestined course and mature into actual rupture at a given time, without regard to the nature of the work then being performed. Our Workmen's Compensation Law contains a special paragraph dealing with hernia. 5 Miss. Code Supp., Section 6998-12.

In line with other state statutes our Legislature sought to remove doubt as to a proper relation between the work and the hernia by requiring proof of more than mere coincidental injury. The hernia must follow "as the result of sudden effort, severe strain" or trauma. Most of the diagnostic symptoms are subjective and the Legislature saw fit to require certain circumstantial evidences, which the history of such cases had disclosed as the usual, if not inevitable, indications. It must be kept in view that hernia is not per se compensable.

I am of the opinion that this Court by reviewing the conflicting testimony, has in effect, tried the case de novo. We are without power so to do, and more to the point, the circuit court lacked such authority.

The factual prerequisites in this sort of case are set out in the controlling opinions. There was testimony as to which the Commission could reach alternate conclusions. By emphasizing some of the testimony and disregarding other parts, support for any view may be

found. Some of the witnesses testified that the pieces of veneer weighed up to eight or ten pounds, others only a few ounces. We seem to have chosen to assume the maximum weight.

However, there are several respects in which it would seem the Commission was compelled to find as it did. These relate to the failure of the appellee to show "to the satisfaction of the Commission" Items 1, 3 and 4. The definition of "severe pain" under paragraph 2 may not be definite, but when an applicant, who is alert to do himself no disservice by understatement, measures his agony by the test of a "bee sting", the least we can say is that the Commission was untrammeled in its right to adjudge whether this prerequisite was "shown to the satisfaction" of the Commission.

What is not to escape repeated emphasis, however, is that neither the circuit court nor this Court can revise a factual finding made by the Commission on substantial testimony. The Commission is an administrative body exercising executive functions. It is pro hac vice an extended arm of the Legislature. Compare Stone v. Farish, 199 Miss. 186, 23 So. (2d) 911. Review of its findings of fact ought not to be allowed so long as they are based on substantial testimony. Neither the Circuit Court nor this Court may sit as an administrative board. California Co. v. State Oil & Gas Board, 200 Miss. 824, 27 So. (2d) 542, 28 So. (2d) 120.

The only function which may be exercised by the circuit court, and in turn by this Court, is a judicial one. A judicial question may here arise only when it appears that the Commission acted without supporting evidence, that is to say, capriciously or arbitrarily. City of Meridian v. Davidson, Miss., 53 So. (2d) 48. We have, in defending administrative boards against a review of its discretion and judgment based on substantial testimony, struck down, as unconstitutional, a requirement that such appeals shall be heard de novo. California Co. v. State Oil & Gas Board, supra. Such is the force of these

considerations that this Court has expressed itself as to the necessity for striking out a provision for a jury trial upon an appeal from a decision of an administrative board. City of Meridian v. Davidson, supra. The vice of a hearing de novo is found to beset the provision for review by a jury. These observations are in point in view of the contention that under Section 20 of Chapter 354, Laws of 1948, "The circuit court shall review all questions of law and of fact". A later provision also assails the finality of the commission's finding: "If prejudicial error be found, the same shall be reversed and the circuit court shall enter such judgment or award as the commission should have entered". To save these provisions from constitutional defect they must be construed to mean that a judicial question arises only when the order of the commission is not "supported by substantial evidence, is arbitrary or capricious, beyond the power of the [Commission] to make, or violates some constitutional right of the complaining party". California Co. v. State Oil & Gas Board, supra [200 Miss. 824, 27 So. (2d) 545]; Dixie Greyhound Lines, Inc., v. Mississippi Public Service Comm., 190 Miss. 704, 705, 200 So. 579, 580, 1 So. (2d) 489.

The controlling opinion accepts the latter statutory provision without question. It construes it as permitting a review de novo. This results in constituting the circuit court as a court of review of the administrative or legislative functions of the Commission. It allows the circuit court and this Court to abandon its judicial robes and sit amid the councils of administration not only, but to "reverse the order of the commission in a case where the court found that such order was based upon findings of fact which were contrary to the weight of the evidence". Such would be a hearing de novo. This, indeed, was the basis for the finding by the circuit court. Under our decisions this is not enough. A finding of no evidence is judicial; a disagreement as to the weight of conflicting evidence is not so. To the Commission was delegated the right and responsibility to determine issues of fact.

The legislative intent was obviously to make adjudications by the commission administrative acts, which are and ought to be final unless the bases therefor either in law or fact raise a question that is purely judicial.

These views find additional support in the procedure for hearing on appeal. 5 Miss. Code Supp., Section 6998-26. "Appeals shall be considered only upon the record as made before the commission . . . If no prejudicial error be found, the matter shall be affirmed . . ." Obviously this contemplates an error in law, for only such errors may be judicially reviewed. 58 Am. Jur., Work. Comp., Secs. 483, 530.

Cases dealing with the principles of administrative law are moving with visible and irresistible force toward the concentration of responsibility and authority in fact finding boards. No matter what the scope of the duties of a particular board, it is protected against judicial review wherever a reasonable decision is bottomed upon reasonable testimony. If remedy is desired, the appeal is to the legislature not the courts.

Judge Hand, in speaking for the Circuit Court of Appeals, 2nd Circuit, stated ". . . the Supreme Court has as much circumscribed our powers to review the decisions of administrative tribunals in point of remedy, as they have always been circumscribed in the review of facts. Such tribunals possess competence in their special fields which forbids us to disturb the measure of relief which they think necessary. In striking that balance between the conflicting interests involved which the remedy measures, they are for all practical purposes supreme." Herzfeld v. Federal Trade Commission, 140 F. (2d) 207, 209. This view is reinforced by John Siegel Co. v. Federal Trade Commission, 327 U. S. 608, 612, 66 S. Ct. 758, 760, 90 L. Ed. 888, where it is stated, "It [judicial review] extends no further than to ascertain whether the commission made an allowable judgment" (in its choice of the remedy). It is found in Thomas v. Pennsylvania R. Co., 162 Md. 509, 514, 160 A. 793, 795

644

that ''In nearly half of the state acts in this country and in federal acts, finality is given to findings of the commission on facts''.

Certainly a uniform practice in respect to the review of all our administrative boards is desirable. Such uniformity is compelled by our duty to confine judicial and administrative functions within their respective limitations. Up to this time such uniformity has been achieved, with respect to the Public Service Commission, Dixie Greyhound Lines v. Mississippi Public Service Comm., 190 Miss. 704, 200 So. 579, the Oil and Gas Board, California Co. v. State Oil & Gas Board, 200 Miss. 824, 27 So. (2d) 542, 28 So. (2d) 120, and a Municipal Civil Service Commission, City of Jackson v. McLeod, 199 Miss. 676, 24 So. (2d) 319; City of Meridian v. Davidson, Miss., 53 So. (2d) 48, the State Tax Commission, Stone v. Farish, supra.

We have here made the Commission a mere ante-room to the circuit court and the latter but a way station on the route to this Court where the issues of fact remain open for re-examination, and during which hearing the members of this Court become pro hac vice the Workmen's Compensation Commission. This ought not so to be.

**Roberds, J.,** joins in this dissent.