JOHN E. FRANCK, PETITIONER-APPELLANT, v. ARMOUR & COMPANY, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 23, 1952—Decided July 22, 1952.

Before Judges McGeehan, Jayne and Goldmann.

Mr. *Seymour B. Jacobs* argued the cause for appellant (*Mr. Fred Freeman*, attorney).

Mr. *Isidor Kalisch* argued the cause for respondent (*Mr. James J. Skeffington*, attorney).

The opinion of the court was delivered by

McGeehan, S. J. A. D. John E. Franck sought workmen's compensation benefits under *R. S.* 34:15–12(*x*), as amended *L.* 1945, c. 74, § 5, for what is commonly known as a five-point hernia, as distinguished from a traumatic hernia. His petition was dismissed in the Division of Workmen's Compensation and on appeal the Bergen County Court affirmed.

The statute in effect at the time (above) provided that a non-traumatic hernia was not compensable unless the employee established by preponderant proof

"that the hernia was immediately caused by such sudden effort or severe strain that, first, the descent of the hernia immediately followed the cause; second, that there was severe pain in the hernial region; third, that there was such prostration that the employee

was compelled to cease work immediately; fourth, that the above facts were of such severity that the same was noticed by the claimant and communicated to the employer within twenty-four hours after the occurrence of the hernia * * *; fifth, that there was such physical distress that the attendance of a licensed physician was required within twenty-four hours after the occurrence of the hernia."

Franck was employed to drive a truck and to deliver meats, and he worked without any helper. His testimony was that on February 13, 1950, at about 2:30 P. M., he arrived in a 1½-ton Ford truck at the Grand Union store in Tenafly to make a delivery of four cases of pork, each case weighing about 115 pounds, and a few small pieces of meat. He picked up the first case of pork, put it on his shoulder, and as he turned toward the store, he slipped on the snow and slush on the ground. He fell on his buttocks and the case of pork fell on him, striking him in the stomach on the right side and knocking the wind out of him. He sat there for two or three minutes, and when he tried to get up he felt a sharp pain in his side. On rubbing his side he felt "a little bit of a lump." After he arose, he walked about for five to eight minutes, then picked up the case which he had dropped and carried it into the store, which was about 20 feet distant. He completed the delivery, but felt a sharp pain each time he picked up a case. From the Grand Union store, he drove about three and one-half miles to another store, where he delivered 50 cases of dog food, each case weighing 55 pounds, but in this delivery he merely pushed the cases from the front of the truck to the rear and an employee of the customer took off the cases. Next, he travelled about three-quarters of a mile and delivered two lambs, each weighing 38 pounds, carrying them about ten feet from the curbstone to the store. He then drove his truck to the company's garage, arriving there about 4:15 P. M. Closing time was 4 P. M. and all the other employees had already gone home. In connection with his driving of the truck after the accident, he said: "When I put my foot on the brake I would had to lift my foot up with my hands like I couldn't lift it up with its own

power." He reported back to work about seven o'clock on the following morning, and shortly thereafter saw Mr. Zock, the company manager, and told him about the accident on the previous afternoon. Following Mr. Zock's instructions, he went directly to see Dr. Finke, the company doctor. Dr. Finke examined him at 9:15 A. M. and told him he was ruptured.

Dr. Finke, a witness for the employer, testified that he examined Franck at 9:15 A. M. on February 14 and found a "right inguinal hernia with a definite mass there" and so informed the employer. In answer to a hypothetical question embodying the facts contained in Franck's testimony, he stated that the hernia he found on February 14 was causally related with the accident of February 13.

The entire defense consisted of an attempt to discredit Franck's testimony by the contents of two statements given by him; one to Dr. Finke at the time of the examination of February 14 and the other to a company investigator on February 27, two weeks after the accident.

The statement taken by Dr. Finke reads:

"On February 13, 1950, about 2:30 in the afternoon he was delivering pork weighing about 115 pounds, when he slipped on the snow and struck his buttocks. Soon after lifting another box he felt a pain in the right groin. He did not think same was severe at the time. He went on to Englewood, New Jersey, and finished up his work and went home. The pain in the groin at this time was not severe. The next morning he got up to go to work when he felt pain in the right groin and noticed he had a mass in the right inguinal region. He was advised by Armour & Company to see—he was sent to my office by Armour & Company for examination."

Franck was cross-examined on the fact that there was no mention in this statement of his feeling any lump on his right side immediately after his fall. He explained that the doctor asked him the questions and he answered them and he was not asked if he felt any lump immediately after the fall. Dr. Finke admitted that he did not ask such a question. We think the contents of this statement do not in any way impugn the testimony of Franck.

The detailed statement given to the investigator was signed by Franck and Franck admitted that he read it before signing. · The only substantial discrepancy in this statement is: "I never noticed the lump or swelling of any kind nor did I know I had a hernia until Dr. Finke told me so." Franck denied that he ever made this particular statement and testified that after reading the whole statement, as taken down by the investigator, he called attention to this and other errors, all of which were corrected with this exception. Franck said he signed the statement without this correction, on the investigator's assurance that it was not important and it would be changed in the typewritten copy which ·the investigator would send Franck for his signature. Franck's denial that he made this particular statement to the investigator received strong support from the statement taken by Dr. Finke the day after the accident, in which the doctor recorded: "The next morning he got up to go to work, when he felt pain in his right groin and noticed he had a mass in the right inguinal region." In passing we observe that the requirement "that the descent of the hernia immediately followed the cause" would be met by any of the three versions, because in each case the descent was noticed within 24 hours after the accident. *Borodaeff v. Province Line Dairy, Inc.,* 109 *N. J. L.* 25 (*Sup. Ct.* 1932), affirmed 110 *N. J. L.* 20 (*E. & A.* 1933); *Yannone v. Hind Steel Wire Works,* 9 *N. J. Misc.* 501 (*Sup. Ct.* 1931), affirmed 109 *N. J. L.* 352 (*E. & A.* 1932); *Frank A. McBride Co., Inc., v. Kuehn,* 11 *N. J. Misc.* 764 (*Sup. Ct.* 1933), affirmed 112 *N. J. L.* 90 (*E. & A.* 1934); *cf. Link v. Eastern Aircraft, &c., General Motors Corp.,* 136 *N. J. L.* 540 (*E. & A.* 1948).

 The employer admits that the employee was suffering from right inguinal hernia at 9:15 A. M., February 14, and that the employee proved the requirements of notice to the employer and attendance of a licensed physician within the statutory periods. Unless the employee's testimony is not entitled to credit, he also established all the other requirements. He suffered severe pain in the hernial region at the

time of the severe strain, there was a descent of the hernia within the statutory period, as pointed out above, and he was compelled to cease work immediately. As to the last-mentioned requirement, it does not require a complete and indefinite cessation of work. Our courts have held that this requirement was met in cases in which the employee ceased work for a short period and then resumed work. *Frank A. McBride Co., Inc., v. Kuehn,* above; *Strauss v. Wright Aeronautical Corp.,* 135 *N. J. L.* 371 (*Sup. Ct.* 1947), affirmed 136 *N. J. L.* 483 (*E. & A.* 1948). While it is true that in the last-mentioned cases the work done after the cessation was lighter work than usually done, we do not think that the fact that the work was lighter was the decisive factor. In *Drumbar v. Jeddo-Highland Coal Co.,* 155 *Pa. Super.* 57, 37 *A.* 2d 25 (*Super. Ct.* 1944), the court held that the statutory requirement of immediate cessation of work in a hernia case was met where the employee ceased work for two or three minutes after the accident and then continued to do his regular work for an hour and twenty minutes until quitting time. A similar result was reached in *Lucedale Veneer Co. v. Rogers,* 48 *So.* 2d 148 (*Sup. Ct. Miss.,* 1950). In the present case, Franck was out on the road alone at the time of the accident and the fact that he continued for an hour and a half or so to complete his deliveries, despite his pain, will not operate to defeat his claim.

The deputy director found:

"It is to be noted that when he saw Dr. Fink, he told Dr. Fink that he did not notice a lump until the next morning and in addition he gave a detailed statement within fourteen days after the occurrence which statement is very lengthy and detailed and even goes back to his previous injury and it is to be noted that the petitioner, after reading the statement, had something stricken out and I am reasonably certain that if there was anything else, that he did not agree with, he would have had it stricken out at the time. I have had an opportunity to note the demeanor of the witnesses upon the stand and I question the credibility that can be given to the testimony of the petitioner in denying a certain portion of his statement. He does not appear to me to be a man who would affix his signature to a statement until he was satisfied it contained exactly

what he wanted it to set forth. I am not impressed by his testimony and there is a grave question in my mind as to the credence that can be given it,"

and concluded:

"I feel that the petitioner has not met the burden imposed upon him by law, particularly with respect to cessation of work or the immediate descent of the hernia and after carefully weighing the testimony and considering the question of credibility to be given to the witness, I find that the petitioner has failed to sustain the burden imposed by law."

There is no support in the record for the finding that Franck "told Dr. Finke that he did not notice a lump until the next morning." As to Franck's denial of the one sentence in the statement given to the investigator, we pointed out above that his denial did not stand alone, but was strongly corroborated by the statement given to Dr. Finke. We conclude that the deputy director erred in refusing to give credit to Franck's testimony.

The County Court judge found that the petitioner established a *prima facie* case and that his testimony was not incredible, but affirmed on the ground that the trier of fact had found that full credence could not be given to the petitioner's testimony, and this finding was binding on the County Court in the absence of corroboration therefor. Since we have concluded that the deputy director erred in not giving credit to the petitioner's testimony, the premise upon which the County Court's affirmance depends has fallen.

We have not overlooked the employer's claim that there were three other discrepancies between the employee's testimony and the contents of the statement given by him to the investigator. We do not discuss these claimed discrepancies because if they exist, they are minor and not material, either singly or cumulatively.

Judgment reversed.